GALVESTON, H. & S. A. RY. CO. v. PENNINGTON et al. (No. 5252.)

(Court of Civil Appeals of Texas. San Antonio. April 15, 1914. Rehearing Denied May 6, 1914.)

1. PLEADING (§ 182*)—DENIAL—STATUTE. .

Under Rev. St. 1911, art. 1829, as amended by Acts 33d Leg. c. 127, providing that any fact pleaded by the defense which is not denied by the plaintiff shall be taken as confessed, it is unnecessary for plaintiff to traverse allegations in the answer which are the mere converse of those in the petition; the purpose of the statute being merely to simplify trials by rendering it unnecessary to introduce evidence to prove immaterial issues conceded under the pleadings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 387, 388; Dec. Dig. § 182.*]

2. RAILROADS (§ 344*)—CROSSINGS—CONTRIBUTORY NEGLIGENCE.

Untraversed allegations in the answer, in an action for wrongful death at a crossing, that the headlight of the train which struck deceased's wagon was reflected from the ground and buildings, but that he did not stop, look, and listen, do not show him to have been guilty of contributory negligence, where it did not appear that those reflections could have been distinguished from the reflections from other engines on sidings, for, unless there was something to put deceased on guard, his failure to stop, look, and listen would not be contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1107–1112; Dec. Dig. § 344.*]

3. PLEADING (§ 412*)—WAIVER OF OBJECTIONS—WANT OF REPLY.

Where defendant proceeded to trial as if issue had been properly joined upon all allegations in the answer, the objection that the defense pleaded was admitted because uncontroverted, was waived, and could not be raised after an adverse verdict.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1387–1394; Dec. Dig. § 412.*]

4. RAILROADS (§ 350*)—CROSSING INJURIES—JURY QUESTION.

In an action for wrongful death of one run down at a railroad crossing, the question of his contributory negligence held, under the evidence, for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**5. RAILROADS (§ 346*)—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE — BURDEN OF PROOF.**

In an action for wrongful death of one run down at a crossing, the burden of establishing deceased's contributory negligence is upon the railroad company, and does not shift upon its establishing a prima facie case; but the company is entitled to have the jury consider all the evidence on that issue, whether introduced by it or plaintiff.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1117–1123; Dec. Dig. § 346.*]

**6. EVIDENCE (§ 157*)—BEST EVIDENCE—ADMISSIBILITY.**

In an action for wrongful death, a witness who had sufficient acquaintance with deceased to estimate his earning capacity may testify as to his estimates, where they were not based upon any books, and it did not appear that deceased kept any books showing his earnings.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 460–470; Dec. Dig. § 157.*]

**7. DEATH (§ 99*)—ACTIONS—EXCESSIVE DAMAGES.**

An award of $20,000 damages for the wrongful death of a husband and father, 29 years old, who enjoyed good health, was kind and considerate, and at times earned as much as $60 a week, less expenses, in hauling freight, was not excessive; it appearing that he devoted his earnings to the upkeep of his family, consisting of his wife, who was 29 years old, and four children, ranging in age from 1 to 8 years.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

**8. PARTIES (§ 75*) — OBJECTIONS — TIME FOR MAKING.**

In an action by a widow for the wrongful death of her husband, an objection that she was not entitled to sue for any damages sustained by his parents should be raised upon the filing of the petition, showing that the suit was also on behalf of the parents; it not appearing that they were under any disability whatsoever.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 115, 116, 167; Dec. Dig. § 75.*]

**9. CONSTITUTIONAL LAW (§ 43*)—DEATH (§ 9*)—DUE PROCESS OF LAW—DEPRIVATION OF PROPERTY WITHOUT.**

As Rev. St. 1911, art. 4699, authorizing any one of the parties entitled to bring an action for wrongful death for the benefit of all, is part of the act providing for actions for wrongful death, and gives not only the widow and children of one wrongfully killed but his surviving parents a right of action, the surviving parents cannot complain that to permit the widow to maintain the action for their benefit, without making them parties, will deprive them of their rights without their day in court, contrary to the constitutional inhibition against deprivation of property without due process, for the right to sue for wrongful death is inseparable from the remedy, and a party cannot accept one and attack the other.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 41. Dec. Dig. § 43;* Death, Cent. Dig. § 11; Dec. Dig. § 9.*]

Appeal from District Court, Uvalde County; R. H. Burney, Judge.

Action by Mrs. Ola Pennington and others against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston. Claude Lawrence, of Uvalde, and W. B. Teagarden, of San Antonio, for appellant. Winbourn Pearce, of Temple, A. L. Curtis, of Belton, and Martin & Martin, of Uvalde, for appellees.

MOURSUND, J. Mrs. Ola Pennington, for herself, her four minor children, and the parents of her deceased husband, J. L. Pennington, sued appellant for damages, alleged to have resulted to them by reason of the death of said J. L. Pennington, who was killed on May 14, 1913, by one of appellant's trains, on a road crossing near Uvalde, while crossing same with his wagons and teams. It was alleged that said crossing is situated about 300 yards west of defendant's passenger depot at Sansom, which is called "Uvalde," and within the yard limits of the company where it maintains its main track and four other tracks; that the road crossing the tracks at said place is a public road extending from Uvalde to Rock Springs, and is frequently traveled by the public at all times of the day and night; that the crossing is dangerous, in that, approaching the same from either direction, the view of the track and of an approaching train is obstructed, so that it is difficult to see the approach of a train in entering upon said crossing; that the defendant, in the exercise of ordinary care, would and should have maintained a flagman at and near said crossing to warn persons about to enter said crossing of the approach of trains, but the defendant carelessly and negligently failed and refused to maintain a flagman at such crossing, and adopted no means for the protection of persons passing over said crossing. It was further alleged that on or about May 14, 1913, defendant had carelessly and negligently placed its cars for a long distance in either direction from said crossing on one of its tracks passing over said crossing, and lying north of its main track, and also on other tracks lying south of its main line track, and had negligently and carelessly stopped and placed some of said cars, especially those lying upon the track north of the main line track upon said public road and crossing, so that the same was blocked, and room was barely left between said cars for the passage of one wagon, and so that a person, approaching from the north, and going towards Uvalde, could not see the approach of a train from either direction, and especially could not see the approach of a train from the west; that at said time J. L. Pennington was engaged in hauling freight between Rock Springs and Uvalde, and at that particular time was traveling said road with several wagons attached together, drawn by several teams, and was riding the horse on the left-hand side nearest to the front wagon, and was going towards Uvalde; that about dusk he approached said crossing, and, his view being obstructed, as aforesaid, he could not see the approach of the train, and in the exercise of ordinary care, failing to

see or hear the approach of any train, he drove between the cars of defendant which were placed upon the side track lying north of its main line track, and as he entered upon said main line track was struck by a delayed fast passenger train of the defendant, which was approaching from the west, and sustained serious injuries from which he shortly thereafter died; that defendant, its agents and employés in charge of said train carelessly and negligently ran said train over said public crossing, while the view of the approaching train was obstructed, at an excessive rate of speed, and carelessly and negligently failed to give any warning or signal by ringing the bell or blowing the whistle, or otherwise, of the approach of said train, and had carelessly and negligently cut the steam off, so that the train was running noiselessly onto and upon said crossing; that the negligence of the defendant as alleged was the proximate cause of the injury and death of Pennington. It was further alleged that Pennington sustained his injuries without any fault or negligence on his part. The remaining allegations related to the age, occupation, character, and earnings of the deceased.

The defendant, on September 30, 1913, filed its answer, consisting of a general denial and a special denial, sufficient, under the provisions of chapter 127, Acts of the 33d Legislature (Reg. Sess.), to put in issue each allegation of the petition, and then pleaded that the train was operated in the usual and customary manner, and at the usual rate of speed; that the crossing was neither a dangerous nor much used one, especially after 6 o'clock p. m.; that, when the train was about 500 to 800 yards west of said crossing, the engineer sounded the whistle for the station, and for the crossing and semaphore board, and the bell was also sounded for the crossing, and each of said warnings could readily have been heard by deceased by the exercise of ordinary care; that the engine had a brilliant headlight, which could have been seen from the crossing a distance of more than a mile, and at the time deceased approached the crossing the light from said headlight was reflected from the ground at the crossing and buildings and cars near the crossing, and was plainly to be seen, and, if he did not see this, he could have done so by the exercise of slight care; that the train was making the usual and customary noises of a large and heavy passenger train, which could have been heard for several hundred yards before it reached the crossing by listening with ordinary care, which precaution deceased did not take, or, if he listened, failed to heed what he heard and took the chances of getting across ahead of the train; that the view of the main line track to the westward was not obstructed by cars or other objects, except partially, and for a comparatively short distance near the crossing, and from his position as he approached the track, and at the proper times and places to look before going on the track, deceased could have, without difficulty, seen the train in ample time to have avoided it, in fact the train was in view of deceased's position for 100 feet or more as he drove to the crossing, and he must have seen same, or by the exercise of slight diligence could have seen it, in ample time before driving on the crossing, but he negligently failed to do so, or else did not heed what he saw; that, if the view of the track was obstructed, then deceased could have readily heard the train and the signals and alarms given by it, and, if the rattle of the wagon and harness or anything else interfered with his hearing, could, with little inconvenience, have stopped, before going upon the crossing, at a place where he could see the track to the westward, and by so doing and looking and listening he could, without difficulty, and by the exercise of ordinary care, have both heard and seen the train and avoided the accident, all of which, under such circumstances, a person of ordinary care would have done, and which deceased failed to do, and, if he looked and listened, he failed to heed what he saw; that as a matter of fact deceased was riding one animal of six or eight hitched to two or more wagons, and the rattling of wagons and harness made much noise, which interfered with his hearing to some extent, and he deliberately and negligently drove upon the crossing directly in front of the train, without stopping to look and listen, and without looking or listening for an approaching train, and without exercising ordinary care and caution in any respect, when, by the exercise of any of these precautions or any other precautions such as a person of ordinary care would have exercised, he could have discovered the train in ample time to have avoided it; that in each of said matters deceased was guilty of negligence which caused or contributed to his death.

No replication was filed by plaintiffs. The trial resulted in a verdict and judgment against appellant for $20,000, as follows: Mrs. Pennington $8,000; each child $3,000; the parents nothing.

[1, 2] By the first assignment of error complaint is made because the court refused to give a peremptory instruction to find for defendant. The first proposition asserts that the charge should have been given because of the failure of plaintiff to deny the allegations relied upon to show contributory negligence. An examination of the pleadings discloses that almost all of the facts alleged by appellant as its basis for claiming that Pennington was guilty of contributory negligence were directly controverted in the petition, and issue was fully joined thereon. The allegation with respect to the headlight being reflected from the ground at the crossing and buildings and cars near the crossing, and that it was plain-

ly to be seen, is a new matter not contradicted in the petition. Issue was joined as to whether the train was visible by a person approaching the crossing, and as to whether it made a great noise, and whether the signals were given. The failure to stop, look, and listen cannot be said to show contributory negligence when disconnected from the allegations which are in issue. It was admitted that the train was delayed, and there was nothing to particularly put Pennington on guard, unless it was the reflection from the headlight. We do not think failure to see or be warned by the reflection, there being no allegation that it was the only headlight casting a reflection upon the crossing, or facts showing that Pennington could not in the exercise of ordinary care have taken it for the reflection of a headlight from an engine attached to some of the many cars alleged to have been on the tracks at and near the crossing, can be said to show negligence as a matter of law. We conclude that the facts not in issue considered alone fail to show contributory negligence as a matter of law, and that, had the ruling of the court been invoked upon the pleadings, and he had decided against appellant, we would not reverse such decision. Article 1829, as amended by chapter 127, Acts 33d Leg. (Reg. Sess.), provides: "Any fact so pleaded by the defense that is not denied by the plaintiff shall be taken as confessed." This, of course, only applies to facts not already in issue by virtue of plaintiff's allegations. To allege in affirmative language the converse of what plaintiff has alleged does not constitute new matter which must in turn be controverted. If the new facts standing alone do not show contributory negligence, the pleader could only take advantage thereof by objecting to evidence controverting same, and by having the court instruct the jury that such facts were admitted, should the same be material with respect to any issues submitted to the jury. The purpose of the Legislature in passing said law was to simplify trials by reducing the number of issues to be decided, thus shortening the trial, and obviating the necessity of calling witnesses to prove undisputed facts.

[3] In this case appellant in no manner sought to avail itself of any rights with respect to the facts stated in its answer which were not controverted until it filed a motion for a new trial. True, it asked for a peremptory instruction on the ground "that plaintiffs have wholly failed to show defendant liable for the death of J. L. Pennington under the law"; but thereby the court was not apprised of any contention that appellant claimed a judgment upon the pleadings. Nor in filing exceptions to the charge was the court informed that appellant contended the issue should not be submitted. Evidence had been introduced as if issue was joined on all the facts alleged. In view of all this appellee contends that appellant waived its right to take advantage of plaintiff's failure to file any denial of the additional facts alleged by appellant. The general rule as announced in 31 Cyc. p. 733, is as follows: "Failure to file any pleading which is necessary to form an issue, including a complaint, answer, or reply, or otherwise failing to join issue properly or at all upon any or all of the allegations appearing in the pleadings, is deemed waived by voluntarily proceeding to trial as though issue was properly joined. Likewise, where the parties have voluntarily tried the case as if certain matters were in issue, neither will be permitted afterward to object that such matters were not properly put in issue by the pleadings." Appellant relies upon the Kentucky cases of Railway v. Paynter's Adm'x, 82 S. W. 412, and Railway v. Hibbitt, 129 S. W. 320. The Kentucky statute provides "that every material allegation of a pleading must, for the purposes of the action, be taken as true unless specifically traversed." In one of the Kentucky cases, Gore v. Railway Co., 32 S. W. 754, some weight is given to a statute providing that judgments shall be given for the party whom the pleadings entitle thereto, though there may have been a verdict against him. That statute appears to exclude the idea generally recognized that certain defects of pleading may be cured by verdict. We see no reason for adopting the Kentucky rule, and believe the general rule announced in Cyc. conduces to a fair trial, and will prevent litigants from taking up the time of the courts with experimental trials, relying upon saving themselves, if things go wrong, by urging that they should have had judgment upon the pleadings. Therefore we hold that, if defendant was entitled to a judgment upon the pleadings, it waived its right thereto, and we give such holding as an additional reason for deciding that appellant's first proposition is without merit.

[4] By the second proposition it is contended that the undisputed facts, both including and excluding those in the answer not traversed, show that Pennington's death was due solely to his own negligence or at least to his contributory negligence. In deference to the verdict of the jury, the evidence being conflicting, we conclude that appellant was guilty of negligence proximately causing Pennington's death in not giving the statutory signals for the crossing, and in placing its cars so as to obstruct the view of its main line track, so that a person approaching the crossing as Pennington did could not see the approach of a train coming from the west. We conclude, further, that Pennington was not guilty of negligence proximately contributing to cause his death. We will not attempt to rehearse the evidence upon which these conclusions are based. At the time Pennington was killed three freight trains were waiting at Sansom for the passenger to pass, and at

least two engines faced the crossing. The engines made much noise, while the passenger train had cut off steam and rolled along down grade with slight noise. Pennington drove very slowly, and it cannot be said, as a matter of law, that had he stopped he would have heard the passenger train.

[5] The fifth, sixth, and seventh assignments relate to charges given and refused on the question of burden of proof upon the issue of contributory negligence. Complaint is made because the court gave plaintiff's special charge No. 1, which placed the burden of proof upon defendant upon the issue of contributory negligence, but instructed the jury that upon said issue they should take into consideration all the evidence offered in the case, whether by plaintiff or defendant. Appellant excepted to the charge on the ground that under the facts of this case the burden should have been placed upon plaintiff to show that Pennington was not guilty of contributory negligence, or at least that special charge No. 3, offered by appellant, should have been given, as follows: "You are further charged that in this case, if, upon consideration of all the facts in evidence tending to explain the happening of the accident to J. L. Pennington, and showing his relationship thereto, you are of the opinion that it indicates that he was guilty of contributory negligence, then the burden would be upon the plaintiff to overcome by a preponderance of the evidence this condition, and to establish by a preponderance of all the evidence that Pennington was not guilty of any act or omission amounting to negligence that either caused or contributed to his death; and, if the plaintiffs have failed to sustain such proof, then they cannot recover in this case, and your verdict will be for the railroad company."

The contentions announced in the propositions under assignments 5, 6, and 7, all relating to this matter, may be briefly stated as follows: (1) That the testimony necessary to show the circumstances under which Pennington came to his death, and his relation to the happening of the accident, amply show prima facie that he was guilty of contributory negligence, and that this was still more manifest by the facts alleged by appellant, and not denied by appellee, for which reasons the burden should have been placed upon plaintiff. (2) If the court cannot say, as a matter of law, that a prima facie case of contributory negligence has or has not been made out by all the testimony necessary to show the cause of Pennington's death, and his relation thereto, then the court, upon request, should direct the jury to determine whether or not a prima facie case of contributory negligence has thus been established, and, if so, the burden is on the plaintiff to overcome this, looking to all the testimony for the final solution of the issue. In sup-

port of its contentions, appellant cites the case of Railway v. Reed, 88 Tex. 447, 31 S. W. 1058; but the doctrine there announced, and followed in many cases, has no application here, because the charge given in this case was carefully worded so as not to leave any chance for the jury to be misled into believing that it could only consider the testimony introduced by defendant upon the issue whether Pennington was guilty of contributory negligence. This line of cases has no bearing upon the questions presented in appellant's propositions. The contentions made by appellant have been urged in many cases in this state, and, while the existence of exceptions to the general rule that the burden of proving contributory negligence shall be placed upon the defendant in the charge of the court has been recognized in many cases (but generally held not applicable in such cases), we think it is now settled that no such exceptions exist as are contended for by appellant. H. & T. C. Ry. v. Harris, 103 Tex. 422, 128 S. W. 897; Railway v. Anglin, 99 Tex. 349, 89 S. W. 966, 2 L. R. A. (N. S.) 386. See, also, note to Oklahoma City v. Reed, 17 Okl. 518, 87 Pac. 645, 33 L. R. A. (N. S.) 1188, for a very interesting and thorough discussion of this question; also Chamberlayne on Mod. Law of Ev. c. XI. The assignments are overruled.

[6] By the ninth assignment complaint is made of the admission of the testimony of the witness Young, which was the only testimony upon the very important question as to the earning capacity of the deceased. Young testified that he and Pennington were partners in the freighting business when Pennington first went into such business, but for some time prior to Pennington's death the witness had no interest in the business; that Pennington could carry from Uvalde to Rock Springs about 10,000 pounds as an average load, and received 60 cents per 100 for carrying same. He also testified as follows: "He made a trip a week; he hauled freight from here to Rock Springs; he freighted from here to Rock Springs all the time; he also hauled freight from Rock Springs back this way. The last month or two he hauled wool he had parts of loads from Rock Springs here all the time. The last month or such matter he had a full load every trip I think; that is, about 10,000 pounds." Upon cross-examination, permitted for the purpose of testing "the personal knowledge" of the witness, it developed that he did not know whether Pennington kept any books showing his earnings, but that the witness, being in the grain business, had a set of books from which he could tell what Pennington had hauled for the grain store, but that he also hauled for other people. The witness did not testify how much deceased hauled for the grain store. Objections were then urged by appellant to the testimony, and a motion made to strike same from the record. As the witness

did not undertake to state what was shown by his books, and as his books, if produced, could not have shown what amount of freight was hauled by deceased in all, or what deceased's earnings were, we may leave out of consideration the fact that the witness had books showing what deceased had hauled for him. Such statement did not indicate the existence of better evidence than he was able to give as to the entire earnings of Pennington, which was the only fact important to be determined. After the objection was overruled, the witness proceeded to state, without further objection, that the expense of making each trip was about $10; that the average freight rate was 60 cents per 100 pounds; that Pennington could make a trip in 6 days, and for a long time made a trip once a week; that a man can always haul a full load from Uvalde to Rock Springs; and that for the last month Pennington freighted he had a load both ways. On cross-examination he testified that Pennington had been freighting for about 6 or 8 months, that he had nine or ten animals and three wagons which he trailed together, hitching the teams to the leading wagon; that deceased owned three of the horses, while witness owned the remaining horses and two of the wagons, which he permitted deceased to use free of charge, but had the right to take them at any time. The question is whether, under the circumstances, error was committed in not excluding the testimony. It must be admitted that Young could only estimate Pennington's earnings. He testified to facts which showed that he was qualified to make such estimate, and stated the facts upon which he based such estimates as he made. He was never asked to make a final estimate for any given period, nor whether the conditions of the roads and weather affected the earnings; but we take it that no sensible jury would fail to make the allowances which the witness would have been bound to have made if asked the questions relating thereto. His testimony did not disclose or even indicate that better evidence could be obtained. He did not know whether Pennington kept any books. Appellant did not ask that witnesses be called to testify on the issue whether better evidence could be procured, and it is highly improbable that such was the fact. As it was not shown that primary evidence could be obtained, there was no error in admitting the testimony of Young. Chamberlayne on Mod. Law of Ev. § 479; Greenleaf on Ev. § 84; M., K. & T. Ry. v. Milam, 20 Tex. Civ. App. 688, 50 S. W. 417; Lewis v. San Antonio, 7 Tex. 313. In the case of Railway v. Brown, 16 Tex. Civ. App. 105, 40 S. W. 608, the court held that, even though books were kept, a witness could estimate a physician's income if he did so independently of the knowledge he obtained from the books; but, as it is not shown in this case that books were kept, we are not called upon to pass upon the correctness of that opinion. The other objections to this testimony are also without merit, and the assignment is overruled.

There is no merit in the tenth assignment, which complains of the charge of the court, and the same is overruled.

[7] The eleventh assignment, complaining of the verdict being excessive, is overruled. Deceased was 29 years old, a strong man, in good health, had always engaged in useful pursuits, and supported his family in a proper manner. His wife was 29 years old, and his four children's ages ranged from 1 to 8 years. The testimony relating to his earnings has been hereinbefore stated. All of his net earnings were devoted to the upkeep of his family. He was a kind husband and a man of good habits. T. & N. O. Ry. Co. v. Walker, 125 S. W. 103.

[8] The twelfth assignment reads as follows: "The court erred in refusing to stop the trial upon defendant's motion and suggestion until the father and mother of deceased could be made parties to the suit, when at the trial it was shown that they were living and laboring under no disabilities that would prevent them from suing for themselves in the action. They were necessary parties, and it was error to proceed with them." The plaintiff sued for the benefit of Pennington's parents, and no exception was urged by appellant on account of failure to make them parties to the suit. Mrs. Pennington testified that the parents were alive and in good mental and physical condition, laboring under no disabilities. Pennington's father was present and testified. Appellant filed the motion described in the assignment, and contends that under the state and federal Constitutions the parents must be accorded their day in court, and that courts cannot lawfully proceed to pass judgment upon their rights, if necessary parties, until jurisdiction is obtained over them by process, and that the Legislature has no power to deprive persons of such right, and judgments rendered in disobedience of such rule are void as to such persons, citing article 1, § 19, of our state Constitution and the fifth amendment to the federal Constitution. If appellant wished to object to the bringing of the suit by Mrs. Pennington for the benefit of her husband's parents, the objection should have been made before going into trial. There was no allegation that such parties for whom she was suing were laboring under any disabilities, and the presumption obtained that they were fully capable of representing themselves, and appellant should not have waited until the evidence disclosed that fact, but should have raised the question at once. However, we do not care to rest the overruling of the assignment of error upon that ground, and will consider the objection upon its merits.

[9] Article 4699 of our Statutes (1911), which authorizes suits of this character to

be brought "by all of the parties entitled thereto, or by any one or more of them for the benefit of all," has been in existence for many years, yet we find no case in which the constitutionality thereof has been heretofore questioned. This statute has often been considered by our courts, and it is settled that a suit brought as this one was is a compliance with the statute. The parents need not be made parties to the suit, if it is brought for their benefit, as well as the benefit of the widow and children. S. A. & A. P. Ry. v. Williams, 158 S. W. 1171; Railway v. Mertink, 101 Tex. 165, 105 S. W. 485. In the case of De Garcis v. Railway Company, 90 S. W. 670, Justice Neill said: "However fraudulently one of the parties plaintiff may. act towards another for whose benefit the right of action is given, if such fraud is unknown, not participated in, nor connived at by the defendant, he is not called upon to protect the rights of the party whom a coplaintiff, or the one who has brought suit for his benefit, would defraud. In no event can a party to a lawsuit be expected to go into the camp of his adversary and assist him in making out a case against himself." The statute fails to provide for notice to the other parties by plaintiff, and the remedy given the parents is indeed the mere shadow, if they have no opportunity to prove what benefits they received from their son. The widow, even if cognizant of such benefits, would hardly make proof thereof and thus provide another distributee to share in the pecuniary benefits awarded largely upon a consideration of her husband's earning capacity. The statute, therefore, is subject to criticism for not providing for some kind of legal notice to be served on those not bringing the suit, provided their whereabouts is known. But the question is whether such statute violates the due process of law provisions of our Constitution and the federal Constitution. The statute gives a remedy for a wrong for which the common law has failed to make provision, and prescribes the method in which the remedy may be invoked. We cannot separate the method from the remedy, and say that the remedy becomes a right which cannot be restricted by the method provided for invoking the same. The beneficiaries of the law must accept it as it stands, and cannot be heard to say they will reject part and accept part. If the remedy as provided is not as fair and just as it might be, or even if, in exceptional cases, it works out so as to amount to no remedy at all, still it is what the law gives, and the beneficiaries must be satisfied therewith. It is not an analogous case to those in which laws are passed which injuriously affect vested rights. The statute is not subject to the objections made, and the assignment of error is overruled.

The judgment is affirmed.