MORRIS v. BROWN et al.   (No. 387.) †

(Court of Civil Appeals of Texas. El Paso. Jan. 21, 1915. On Rehearing, Feb. 18, 1915.)

1. PLEADING ☞182—ADMISSIONS.

Untraversed allegations in an answer denying that the relation of attorney and client existed as alleged by the petition are not admitted, as it is unnecessary to traverse the allegations of the answer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 387, 388; Dec. Dig. ☞182.]

2. ATTORNEY AND CLIENT ☞63—CONTRACTS—AGENCY.

Under a contract whereby an attorney was to clear the title of a tract of land, B. was to pay the costs, and the owner was to convey a two-thirds interest in the land to the other two, the attorney was the agent of the other two parties, and anything done by the attorney or by others employed by him would inure to the benefit of the other two.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 85, 87; Dec. Dig. ☞63.]

---

**3. ATTORNEY AND CLIENT ☞63 — CREATION OF RELATION—CONTRACTS.**

Where G. was under contract to clear the title to a tract of land in consideration of B. paying the costs and the owner deeding a two-third interest to the other two if successful, M., forming a law partnership with G. during the pendency of a suit in which it was attempted to clear the title, becomes an attorney for all the parties to the contract by participating in the suit with a promise for a portion of the land and prosecuting an appeal with knowledge of the contract, since B.'s act in paying costs amounted to a consideration for the legal services rendered.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 85, 87; Dec. Dig. ☞63.]

**4. ATTORNEY AND CLIENT ☞125—CONFIDENTIAL RELATION—PURCHASE OF PROPERTY BY ATTORNEY.**

Where M., a law partner of G., who was under contract to clear title to a tract of land in consideration of B. paying the costs and the owner deeding a two-third interest to the other two if successful, became an attorney for the parties to the contract by participating in a pending suit, he could not after the unsuccessful termination of that suit start another suit against K., who claimed a portion of the tract adversely, and then buy K.'s interest and dismiss the suit so as to preclude the rights of B., but he held the title to such tract in trust.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 250–263; Dec. Dig. ☞125.]

**5. NOVATION ☞1—SUBSTITUTION OF DEBTOR —CONTRACT OF ATTORNEY.**

Where M., a law partner of G., who was under contract to clear the title to land in consideration of B. paying the costs and the owner deeding a two-thirds interest to the other two, became an attorney for the parties, and while such bought the interest of the owner subject to the contract a novation did not take place, and hence a contention that B. had only the right to recompense M. for his outlay and claim title, and if he did not he ratified the purchase, was not tenable, as the purchase simply made M. a joint owner in the land from a common source of title if title could be cleared.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 1; Dec. Dig. ☞1.]

**6. CONTRACTS ☞261 — CLEARING TITLE — RIGHT TO CANCEL.**

Where M., a law partner of G., who was under contract to clear title to land in consideration of B. paying the costs and the owner deeding a two-thirds interest to the other two, became an attorney for the parties by participating in a pending suit with knowledge of the contract and thereafter bought the interest of the owner, that G. refused to further prosecute the case would not give M. the right to cancel the contract as to B., so as to preclude rights of B. in a purchase of an adverse interest by M., as M. was a party to the contract by purchase from the owner and also by reason of his employment as attorney.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1174–1180; Dec. Dig. ☞261.]

**7. ATTORNEY AND CLIENT ☞125—PURCHASE OF PROPERTY ADVERSELY.**

Where an attorney purchases property adversely to his client, he cannot contend as against the client that his vendor's title was void.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 250–263; Dec. Dig. ☞125.]

**8. ATTORNEY AND CLIENT ☞123—PURCHASE OF PROPERTY—CONTRACT.**

Where M., a law partner of G., who was under contract to clear title to land in consideration of B. paying the costs and the owner deeding a two-thirds interest to the other two, became an attorney for the parties to the contract, he could purchase the interest of the owner subject to the contract.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 239–245, 248, 249; Dec. Dig. ☞123.]

**9. APPEAL AND ERROR ☞1040 — HARMLESS ERROR—EXCEPTION TO PLEADING.**

The failure to sustain an exception to a paragraph of the petition is not reversible error, where the paragraph is not material to plaintiff's recovery.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. ☞1040.]

**10. APPEAL AND ERROR ☞1062—HARMLESS ERROR—SPECIAL QUESTIONS TO JURY.**

The submission of a special question on an immaterial issue is harmless error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. ☞1062.]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Suit by Frank Wells Brown against Frank G. Morris, Sam B. Gillett, and P. E. Kern. From a judgment for plaintiff, defendant Morris appeals. Affirmed.

Frank G. Morris and T. A. Falvey, both of El Paso, for appellant. C. L. Galloway, S. P. Weisiger, Turney & Burges, Bates McFarland, and S. B. Gillett, all of El Paso, for appellee.

HARPER, C. J. This suit was brought by Frank Wells Brown against Frank G. Morris, Sam B. Gillett, and P. M. Kern, for certain land, was submitted to a jury upon special issues, and resulted in a judgment for Brown for an undivided one-third interest in 60 acres, from which this appeal is taken.

The jury made the following findings of fact:

"(1) Did defendant S. B. Gillett intervene in cause No. 5705, on September 23, 1905, as the attorney of Pat Breen, himself, and plaintiff Brown, in the name of Pat Breen, but for the purpose of establishing the Breen claim of title, for their joint use and benefit? Answer: Yes.

"(2) Had plaintiff Brown, prior to the dismissal of the suit of Morris v. Kern, No. 8916, and the execution by Kern of the deed dated March 4, 1912, repudiated the contract of April 6, 1905, and declined to do those things imposed upon the said Brown by the terms of said contract? Answer: No.

"(3) Did the relation of attorney and client exist between defendant F. G. Morris and plaintiff Frank Wells Brown during the time said Morris was acting as attorney in the intervention in the case of O. O. Coffin v. C. R. Morehead et al., No. 5705? Answer: Yes.

"(4) Did plaintiff Frank Wells Brown comply with the terms of the contract between himself, S. B. Gillett, and Pat Breen of date April 6, 1905? Answer: Yes.

"(5) Did defendant Frank G. Morris represent all the parties interested in the Breen claim

of title while he was prosecuting that claim of title in cause No. 5705, under his contract with Sam B. Gillett? Answer: Yes.

"(6) Did plaintiff Brown acquiesce in and ratify the action of Sam B. Gillett in employing said Morris as attorney to prosecute the Breen claim in cause No. 5705? Answer: Yes.

"(7) Did plaintiff Frank Wells Brown and defendant F. G. Morris understand that the employment of said Morris by Sam B. Gillett was for the use and benefit of all parties claiming under the Breen title, and that said Morris was representing all of the claimants under the Breen claim of title in said litigation? Answer: Yes.

"(8) Does the deed from P. E. Kern to F. G. Morris, dated March 4, 1912, state the true and full consideration for the conveyance of the 60 acres of land therein described? Answer: No.

"(9) What was the consideration for the execution of the deed dated March 4, 1912, from P. E. Kern to F. G. Morris? Answer: The dismissal of the suit and settlement of the Breen claim and for legal services rendered and to be rendered.

"(10) Did F. G. Morris accept the 60 acres of land described in the deed from P. E. Kern to him in the settlement of the entire Breen claim? Answer: Yes.

"(11) Did Kern convey the 60 acres described in said deed dated March 4, 1912, to Morris for the purpose and with the understanding and agreement with Morris that they were settling the entire Breen claim? Answer: Yes.

"(12) Did the defendant Morris release or convey to Kern verbally or in writing any right or title of plaintiff Brown, if any he had, or right to acquire any interest in the Breen title or in Brown's claim under the Breen title? Answer: Yes.

"(13) Did defendant Morris obtain any information from plaintiff Brown about the Breen title or claim which defendant Morris had not already acquired from the title papers which were in possession of Gillett after Gillett employed Morris and before Morris talked with Brown about the title? Answer: No.

"(14) Did Gillett and Morris in good faith contemplate that the probable course of prudent procedure to perfect the Breen title after Breen's case had been lost in the Supreme Court required that further proceedings should be taken in the United States court and that any suit brought in the state court should be removed to the United States court for trial at the time defendant Morris wrote the letter read in evidence before the court and jury, suggesting such probable course of procedure and demanding to know of Brown whether or not he would perform his contract to pay all court costs that Gillett might incur in perfecting the title? Answer: Yes.

"(15) Plaintiff Brown filed an amended petition on April 23, 1913, in his former suit wherein he still claimed the Breen title and not under Morris' claim under the Kern title. Did plaintiff Brown, before April 23, 1913, learn from P. E. Kern substantially all that Brown ever learned as to what he alleges to be the true consideration of the deed from Kern to Morris? Answer: No.

"(16) Did the plaintiff Brown on April 23, 1913, have full information as to the consideration of the Kern deed to Morris, as he alleges the consideration to be in his amended petition filed in this cause? Answer: No.

"(17) Were the legal services rendered by defendant Morris the whole or part of the consideration moving Kern to make the deed to Morris for 60 acres? Answer: Part.

"(18) Did the defendant Morris release or convey to Kern verbally or in writing any right or title of plaintiff Brown, if any he had, to acquire any interest in the Breen title, or in Brown's claim under the Breen title? Answer: Yes."

Additional statement of facts: On the 6th day of April, 1905, Sam B. Gillett and Frank Wells Brown entered into an agreement with Pat Breen, as applicable to this opinion, substantially as follows:

"* * * Whereas Pat Breen in 1885 purchased a 160-acre interest in survey No. 270, El Paso county, Texas, from M. J. McKelligon: * * * Now, therefore, said Gillett agrees to perfect title thereto, * * * and said Brown agrees to pay all court costs that may be incurred in that behalf, and for and in consideration of said legal services and the defraying of said court expenses, said Breen hereby agrees to execute and deliver to said Gillett and Brown a good and sufficient deed to an undivided two-thirds interest in and to said land as soon as he shall be convinced that the title to said land is in him, etc."

In September, thereafter, Gillett, as attorney for Breen, intervened in a suit pending, entitled C. R. Morehead v. C. O. Coffin et al., Gillett and Brown not being made parties to the suit, and asserted the Breen title to 160 acres of survey No. 270. Thereafter, during the pendency of said suit, Gillett and Morris, appellant, formed a law partnership, and Gillett agreed to allow Morris one-fifth of any land recovered as his part under the Breen contract. Morris, with full knowledge of the provisions of the Breen-Gillett-Brown contract, took active charge of the prosecution of the suit, assisted in the trial in the lower court, and participated in the preparation and prosecution of the appeal to the Supreme Court, which resulted in judgment against the Breen title. Brown refused to allow Morris any fee. The reason given was that Gillett was obligated to do the legal work and he to pay costs. Brown employed Edwards & Edwards to assist in the trial of the case.

While the case of Morehead v. Coffin et al. was pending in the Supreme Court, Morris purchased Breen's title for $500. The deed to Morris contained the stipulation that:

"It was the intention to convey all the grantor's interest in the lands, subject only to the contract for a part of said land heretofore made with Gillett and Brown, which Morris understands and agrees to respect."

After the Supreme Court of Texas decided against the Breen title, Morris proposed to Gillett and Brown that the case could again be filed, first in the state court, and then transferred to the United States court. Brown refused to pay any costs in the United States court, but still expressed a willingness to pay any costs incurred in a further prosecution of a case to establish the Breen title in the state courts. Morris filed suit in the state courts and Brown intervened in the suit. While the latter suit was pending before the district court of El Paso county, Morris took a deed from P. E. Kern for 60 acres, reciting as consideration $10 and the further consideration of legal services rendered by said Morris in perfecting title

to McKelligon's survey (being land in controversy in this suit) and his agreement to assist in the prosecution in all courts necessary in the case of Kern v. C. O. Coffin. The suit last filed by Morris was filed against Kern, who held the adverse title to the Breen claim, and, upon the execution of the deed from Kern to Morris, this suit was dismissed.

The appellant's brief contains many assignments of error, followed, in some instances, by numerous propositions. To answer each one separately would require a very lengthy opinion, so we will confine ourselves to a discussion of those containing what is believed to be the propositions of law upon which the rights of the parties to this appeal rests; and, as to such, we are of the opinion:

[1] The first and second assignments charge that the evidence does not support the findings of the jury, especially in connection with the facts admitted by the pleadings. There is no admission in the pleadings that the relation of attorney and client existed or did not exist between Morris and Gillett. Brown's pleadings are sufficient to charge that the relationship existed, and the fact that Morris' answer alleged the facts to be different, and his allegations not denied, do not constitute admissions. It is not necessary to traverse the allegations in defendant's answer, because they were merely the converse of the plaintiff's allegations. G. H. & S. A. Ry. Co. v. Pennington, 166 S. W. 464.

[2] The contract between Breen, Gillett, and Brown, quoted above, made Gillett the agent of both Brown and Breen, and constituted the only authority to Gillett or any one else to prosecute suits, or to employ counsel to prosecute or assist in the prosecution of a suit, or suits, to establish the Breen claim of title to the land in controversy, and anything Gillett did pursuant to the contract and in the interest thereof must necessarily be done for the joint interest of all three of the parties thereto, and whatever might be accomplished by Gillett in person or by others employed by him inured to the benefit of all three; because the subject-matter of the contract is so inseparably connected that an attorney could not represent one without, at the same time, representing all. Anything recovered must be apportioned between the three as provided in the contract.

[3] Brown's act of securing all, and, from time to time, paying parts of the costs incurred, amounted to the payment to the attorneys acting in the prosecution of the suits a good consideration for their services, and without which no one could lawfully act, because Brown's part was necessary to be performed—else, the contract never could have become operative.

Morris accepted the employment with full knowledge of this contract, so, when he pleads and admits by his testimony that he accepted the employment, it was tantamount to an admission that he contracted to represent all the parties interested, whether party to the suit or not.

Morris, by his position of attorney in the case, acquired knowledge of all the facts upon which Brown hoped to secure a one-third interest in 160 acres of land; likewise, of the facts which might defeat a recovery, with full knowledge of Brown's interest, as a party to the contract under which the attorney alone was authorized to act. Under such state of facts, it must be held that he had entered into such confidential and contractual relations with Brown as to constitute the legal relation of attorney and client. The evidence is amply sufficient to sustain all the findings of the jury to that effect.

The third, fourth, fifth, sixth, twelfth, nineteenth, and twentieth assignments charge that the evidence is insufficient to support certain findings of the jury and are overruled for the reason given next above.

[4] The relationship of attorney and client having existed, Morris could not at any time purchase an interest in the land in controversy, in opposition to the title of his client, without it being held in trust for the benefit of his client. Sanford Baker v. Humphrey, 101 U. S. 494, 25 L. Ed. 1065; Henry v. Rorman, 25 Pa. 354, 64 Am. Dec. 703; Douglass v. B. Blount, 95 Tex. 369, 67 S. W. 484, 58 L. R. A. 699.

[5] Appellant urges the proposition that even though he be held to have occupied the position of attorney to Brown, when the purchase from Breen took place, he (Brown) only had the right to elect to take his interest by paying Morris the money he was out in purchasing the Breen title, not having elected to do so, but having elected not to take advantage of such purchase by affirming Morris' status as acquired under such contract, and by proceeding and claiming only under the Breen contract to himself, such election was final, and the acceptance of Morris in the place of Breen constituted a novation, because thereby Breen was released from the former contract, and Morris substituted in the place of Breen as the client of Gillett and Brown.

The answer is that the original contract between Breen, Gillett, and Brown gave Brown an interest in the land by its performance, which Morris could not buy from Breen. Although the deed purported to convey it, by conveying the whole of the land subject to Gillett and Brown's right to perfect title, etc., so it was not a purchase of an adverse title in any sense, and Brown could not be divested of any interest in the land by Breen's sale to Morris; so it follows that this purchase by Morris did not place him in any different contractual relationship with Gillett and Brown, but simply placed him (Morris) in a position of a joint owner in the land, from a common source, if title could be cleared, and there was nothing done by the

parties which constituted a novation of contract.

And there is nothing in appellant's contention that the pleadings and evidence show that Brown refused to further carry out his part of the contract and that he thereby forfeited his interest to Morris, because the pleadings are not susceptible of such construction, and the facts sustain the finding of the jury that Brown did not refuse to perform.

[6] But appellant urges that Gillett refused to further prosecute the cause, and, the contract between Breen, Gillett, and Brown being entire, neither could perfect any right under it without performance by each; and there being no pleading in this case that Gillette was willing to perform, but the proof being that Gillett refused to further prosecute the case, the contract was breached, and Brown's remedy is against Gillett for damages, and no right to an interest in the land was perfected, and all right to perfect was lost by cancellation declared by Morris.

If it could be held that Morris never occupied the position of attorney to Brown, this would be a good proposition of law; but he (Morris), having been mistaken as to the legal effect of accepting the employment from Gillett, overlooks the fact that he, upon purchase of the Breen interest, occupied a dual position—a party to the contract by purchase and by reason of his employment as attorney. He occupied Gillett's position, as well as Breen's. If he occupied Breen's position alone, he could have canceled the contract for refusal upon the part of either of the other parties to perform his obligations under it; but he has so bound himself, by accepting employment and undertaking the prosecution of the object of the contract, that he cannot occupy the inconsistent position of refusing to further pursue the prosecution as attorney for Brown, and thereupon claim the contract is for that reason breached.

[7] The fact that the Breen title was void because the original purchaser and the land commissioner did not comply with all the provisions of the law, and that therefore, as contended by Morris, Brown could not recover in any suit, is immaterial, for Morris cannot deny his client's title and his trusteeship for their benefit. Henyan v. Trevino, 137 S. W. 458.

[8, 9] The seventh assignment charges that the court erred in overruling an exception to the following paragraph of plaintiff's pleading:

"That during the pendency of said litigation and while said F. G. Morris was acting or pretending to act in the confidential capacity as attorney for and representing or pretending to represent this plaintiff and said Patrick Breen, therein, and while occupying said confidential relation of attorney for this plaintiff and without his knowledge and consent, he, the said F. G. Morris, acting in utmost bad faith to plaintiff, in violation of law and derogation of plaintiff's rights, and in utter disregard of his own oath as an attorney, and his duties and obliga-

tions to plaintiff, the said F. G. Morris wrongfully procured the said Patrick Breen, on, to wit, the 28th day of June, 1910, to make and deliver to him, the said F. G. Morris, a deed of conveyance of all of said Breen's then interest in said land, which deed is of record in Book 156 on page 478 thereof, the Deed Records of El Paso County, Texas, to which record reference is here made for a fuller description thereof; and which deed the defendant F. G. Morris has on the 23d day of May, 1913, filed among the papers of this cause."

The proposition is that the disqualification of an attorney applies to the purchase of an adverse title, and that the Breen title was not adverse. The court should have sustained the exception, because Morris could buy the Breen title as was done subject to the rights of Brown and Gillett; but the failure to do so is not reversible error for the reason that the pleading was not material to plaintiff's right to recover his interest. The adverse title acquired in this case is the Kern title to 60 acres of the McKelligon survey, claimed by Breen and about which the contract in evidence was executed.

The eighth assignment is that:

"A new trial should be granted because the answer of the jury to question No. 2, when taken in connection with question No. 14, and the undenied allegations as to the passing of the letters of September, 1911, between defendant Morris and plaintiff Brown and Gillett, show as a matter of law that plaintiff Brown did give unequivocal notice to defendant Morris that he would not perform his contract, for which reason Morris canceled said contract, the jury in its answer to question 14 removed all claim of excuse for plaintiff's refusal to perform his contract."

The question submitted by special issue No. 14 is the good faith of Morris and Gillett in proposing the procedure in the United States court to perfect the Breen title, which, under the facts of this record, was an immaterial issue. Brown agreed, as shown by the letters in evidence, that he would pay all costs incurred in the state courts, and the cause never got any further, and it is very doubtful if the cause could have been transferred to the United States court, and the facts show conclusively that the Kern deed was made to Morris in consideration of the dismissal of the cause pending in the state court, the costs of which Brown was obligated to pay, and had not repudiated his obligation. However, this question is disposed of by the observations under the first and second assignments, wherein it is held that Morris was at no time in a position to rescind his contractual obligations as an attorney with Brown and Gillett.

The eleventh assignment reads:

"The court erred in giving to the jury the eleventh paragraph of the general charge of the court over the objection of the defendant Morris, because it assumes that Morris was attorney for the plaintiff Brown at the time he instituted suit in his own name against P. E. Kern and others, and at the time he made the transactions with P. E. Kern, which resulted in Kern executing to Morris a deed to the land in controversy, whereas, the uncontroverted evidence shows that Morris' employment, as at-

torney, was only for the purpose of the former Breen suit against Morehead and others, and that the termination of the suit of Morehead v. Coffin et al. terminated the relations of attorney and client which Morris may have had with any one by reason of his connection with that case."

The answer is that, under the pleadings and facts of this case, the court was justified in assuming that Morris was the attorney of Brown in submitting the facts as grouped.

We find no error in overruling appellant's demurrers complained of in thirteenth, fourteenth, and fifteenth assignments. They are therefore overruled.

[10] The sixteenth is that the court erred in submitting to the jury the question of what the consideration was for the deed from Kern to Morris. The answer is that it did not matter what the consideration was; the only question is: Did Morris obtain an adverse title to Brown's interest?

And the seventeenth and eighteenth, being in effect the same, are overruled for the same reason.

Appellant further urges that, by reason of the fact that the deed from Kern shows that he only got his interest in the land claimed by Breen and in no wise settled the interest of Brown and Gillett, he thereby took title free from any trust relationship existing between himself and Brown, and that Brown could still prosecute his (Breen's) claim for title if he so desired. We are not concerned with what Brown might do towards recovering an interest in the balance of the 160 acres, but what are his rights in relation to the 60 acres?

Whatever Morris got in taking up an adverse title to Brown's claim, he took to the extent of Brown's interest, in trust for Brown, and there is no necessity to draw any fine distinctions here to define whether the trust relationship so existing was constructive, resulting, or express.

In effect, he asserts that he can acquire Breen's title, also the right to prosecute suits in perfecting or clearing it up, then dismiss the suit, the record title being in him, no other person being therefore in a position to assert title, to then claim that he in no wise has compromised or settled plaintiff Brown's right to further pursue his remedy to clear up the title to the entire 160 acres. The transaction is not to be sustained on any such grounds. The acquiring of an interest in the thing in controversy in opposition to the title of his client is forbidden, because, as the decisions above cited say, "it places him under the temptation to be unfaithful to his trust." Such a purchase inures therefore to the benefit of his client as his interest may appear. Brown had a one-third undivided interest in any land the title to which was cleared by any person party to the contract. Where the confidence has relation to the title of the land, the fidelity of

the counsel must necessarily follow the title of his client, wherever it goes. In this case, Brown's interest is one-third of the land acquired from Kern, because the Kern title was the adverse title to clear up which the suits were prosecuted by Morris for Breen, Gillett, and Brown, under a contract, the conditions of which Morris was thoroughly cognizant, and by which he was bound.

The assignments are overruled, and the cause affirmed.

WALTHALL, J., did not sit in this case.

### On Rehearing.

HARPER, C. J. In original opinion, at beginning, it is stated that there was a "verdict for Brown for an undivided one-third interest in 60 acres." There was simply a finding by the jury on special issues, and the use of the word "verdict" was inadvertent. We should have used "judgment." Correction has been made in the original opinion.

A careful consideration of the motion confirms the view that, under the peculiar facts of this case, it was properly found by the jury that the relationship of attorney and client existed between Morris and Brown, and judgment was properly rendered upon the findings of the jury in the latter's favor. The motion for rehearing is overruled.

In response to request of appellant, additional findings of fact are denied. The original opinion is so amended as to make the special issues submitted by the trial court and the answers thereto, and the additional findings of fact contained in the opinion, the findings of fact in this case, which we consider sufficient.