SCHAFF v. SCOGGIN.    (No. 1292.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 20, 1918. Rehearing Denied April 24, 1918.)

1. MASTER AND SERVANT ⬚278(18)—INJURY TO EMPLOYÉ — NEGLIGENCE—QUESTION FOR JURY.

Evidence, in action for the killing of head brakeman of a freight train, which with two others had been standing on a passing track, *held* sufficient to support finding of negligence in backing the train.

2. APPEAL AND ERROR ⬚1062(5)—HARMLESS ERROR—SUBMITTING IMMATERIAL ISSUES.

That the court required the jury to find on immaterial issues is not reversible error, the

number and character of questions propounded not resulting in confusing the jury.

3. APPEAL AND ERROR ⬚743(1) — ASSIGNMENT OF ERROR—SPECIFYING GROUND OF ERROR.

Reference, under a proposition following an assignment of error, to a statement of a hundred pages in the first part of the brief, is not sufficient for a distinct specification of grounds of error relied on, required by Courts of Appeals rule 24 (142 S. W. xii).

4. APPEAL AND ERROR ⬚742(6) — ASSIGNMENTS OF ERROR—SPECIFICATION OF ERROR —"DISTINCT SPECIFICATION OF ERROR."

Propositions following an assignment of error, that it is prejudicial in submitting special issues to give undue prominence to a party's theory of the case, and that repetition thereof by numerous questions calling for findings of evidentiary facts renders the charge argumentative. and is calculated to lead the jury to believe the court entertains certain opinion, are not distinct specifications of error required by Courts of Civil Appeals rule 24 (142 S. W. xii).

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Distinct Specification of Error.]

5. APPEAL AND ERROR ⬚1032(1)—REVIEW—SHOWING INJURY.

Appellant under Courts of Civil Appeals rule 62a (149 S. W. x), prohibiting reversal for error at trial, unless the court consider it probably prejudiced him, must show prejudice from submission of numerous issues calling for immaterial and evidentiary facts.

6. TRIAL ⬚352(6)—SPECIAL ISSUES—SUBMISSION.

It is proper, in submitting the case on special issues, to ask leading questions, if not so framed as to suggest the answer.

7. TRIAL ⬚352(5)—SUBMISSION OF ISSUES—GROUNDS OF NEGLIGENCE.

The several grounds of negligence which plaintiff pleads and supports by evidence should be submitted separately to the jury.

8. APPEAL AND ERROR ⬚232(1)—REVIEW—INSTRUCTIONS—WAIVER OF OBJECTION.

Objections to the charge, different from those made and filed before it was read to the jury, are under Acts 33d Leg. c. 59 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1971, 2061), waived.

9. TRIAL ⬚349(1)—SUBMISSION OF ISSUES—EVIDENCE.

A special issue need not be submitted, there being no evidence in support of it.

10. APPEAL AND ERROR ⬚204(1)—REVIEW—OBJECTION BELOW.

Objection to admission of evidence not urged in the trial court cannot be considered on appeal.

11. APPEAL AND ERROR ⬚728(1) — ASSIGNMENTS OF ERROR — REFERENCE FOR OBJECTIONS.

Assignments of error to admission of evidence, merely referring to several bills of exceptions for the objections made, will not be considered.

Appeal from District Court, Grayson County; C. T. Freeman, Judge.

Action by Josie M. Scoggin against C. E. Schaff, receiver. Judgment for plaintiff, and defendant appeals. Affirmed.

Head, Dillard, Smith, Maxey & Head, of Sherman, and C. C. Huff and A. H. McKnight, both of Dallas, for appellant. Wood, Jones & Hassell, of Sherman, for appellee.

---

⬚For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

HALL, J.  On the 21st day of April, 1916, W. A. Scoggin was killed at the station of Hodge, while serving as a brakeman on a freight train.  At the time of his death he was in the employ of appellant, the receiver of the Missouri, Kansas & Texas Railway Company of Texas.  Appellee, as administratrix, filed this suit to recover damages for herself and four minor children.  The case was submitted to the jury upon special issues, resulting in a verdict and judgment in the sum of $26,000.  It appears that the station of Hodge is located about four miles north of Ft. Worth; that it has extensive railroad yards, filled with tracks, stock pens, switches, cross-over track, etc.; that at the time of the death of W. A. Scoggin there were three freight trains in the yards, each of them having full crews.  All tracks through this station run practically north and south.  The east track is the main line.  The next track west is the passing track, and the next is known as the stock track.  There is a cut-off connecting the main line with the passing track, the switch connecting the cut-off with the main line being north of the switch connecting the cut-off with the passing track.  South of this cut-off was another cut-off connecting the passing track with the stock track.  The switch connecting the cut-off with the passing track is north of the switch connecting it with the stock track.  The deceased was head brakeman on freight train No. 374 out of Ft. Worth, its destination being Denison.  When his train arrived at Hodges it headed in on the passing track at the south end of the yards, a little less than a mile from the place where deceased was killed, and proceeded north until the end of the train was north of the switch connecting the passing track with the main line.  When his train arrived in the yards, at about 9 o'clock at night, there were two southbound freight trains on the main line, Nos. 397 and 752, respectively, both headed south, 397 standing in front of 752.  After train No. 374 stopped on the passing track, in the position above stated, No. 397 backed north up the main line, and headed in south on the switch connecting the main line with the passing track, pulling through the cut-off connections connecting it with the passing track, continued south down the passing track until it cleared the switch connecting the passing track with the stock track.  No. 752 then headed in from the main line on the same cut-off to the passing track, and, after having proceeded south to the south end of the yards, backed in on the passing track, left a part of its train, then pulled south onto the main line, and backed north, and headed in down the passing track to the switch connecting it with the stock track, headed in over this cut-off, and continued south down the stock track until it cleared the switch connecting the passing track and stock track.  These three freight trains remained in the positions indicated until two north-bound passenger trains passed Hodge, going north on the main line.  After both passenger trains passed the station, freight train No. 397 backed out of its position on the passing track over the cut-off where it had entered, and Taylor, the rear brakeman of decedent's train, opened the switch of the cut-off at the passing track, deceased opening the switch of the cut-off at the main line.  Immediately after 397 cleared the switch at the passing track the engineer in charge of train No. 374, acting upon the signal of rear brakeman, Taylor, immediately proceeded to back his train down the passing track, struck Scoggin, ran over him, and injured him in such a manner that he died within an hour.  Appellee alleges eight or nine different grounds of negligence, but the court submitted only four grounds, as follows:  (a) Whether the employés of defendant were guilty of negligence in moving train No. 374 backward at the time, under the conditions and in the manner in which it was moved; (b) whether the engineer was guilty of negligence in moving said train without first ascertaining where deceased was; (c) whether the employés were guilty of negligence in moving the train backward at the time without giving proper and sufficient signals of an intention to do so; and (d) whether the brakeman was guilty of negligence in not waiting to give the signal to the engineer to move said train backward until local train No. 397 had pulled out of the yards.  All of these issues were found by the jury in favor of appellees.  The defendant pleaded assumed risk, contributory negligence, and that the accident was caused in some way not due to the negligence of appellant's employés.

[1]  The first assignment of error is predicated upon the refusal of the court to direct a verdict for the defendant, and it is insisted that the evidence fails to show affirmatively any negligence on the part of defendant which directly and proximately caused the death of deceased, and the proposition is further urged under this assignment that a scintilla of evidence or a mere surmise that there may have been negligence will not justify the court in submitting the case to the jury.  A consideration of these propositions requires a review of all the testimony.

The statement of facts is voluminous, and for the purposes of this opinion it will only be necessary to detail such portions of the evidence as relate to the propositions urged.  It was shown that deceased was an experienced and an efficient railroad employé.  His train, No. 374, had 10 or 11 cars in it, and had stopped on the passing track in such position that the caboose was two or three car lengths north of the switch connecting the cross-over with the passing track.  Fireman Reynolds testified while on the stand

that he did not remember whether or not the engineer blew the whistle before he started to back the train, but when shown his written statement of the occurrence said that the engineer answered a back-up signal with three blasts of the whistle. Train Dispatcher Spicer, who was standing east of train 397, testified that he heard three blasts of the whistle of some train north of where he stood, and afterwards said that it came from northwest. Remembering the position of the trains in the yard, the length of the cross-over tracks, and the position of the deceased just before train No. 374 began to back south on the passing track, he must have been near the rear end of the caboose; and the jury was authorized to infer that, after closing the switch on the main line, he stepped back on the passing track in the rear of and near the caboose of 374, and to infer from the fact that he was an experienced railroad man that he did not hear the signal, if any was given, by the engineer; or the jury might have concluded from this evidence that train 374 did not give the back-up signal until it had moved some distance, and that Scoggin had already been injured when the whistle was sounded. It appears that there was no agreement between the crews of the various trains relative to the order of getting their train out of the yards. As stated, 397, which was on the main line at the time of the accident, proceeded south, as it had no work to do in the yards. It further appears that 752, also headed south, had no work in the way of switching to do at Hodge, but that 374 had to pick up some stock cars located on the stock track south of where 752 was standing, and the jury was warranted in believing that 752 should have left the yards, opening up the stock track for 374 before the last-named train would be called upon to move. It appears that 752 was making preparations to leave the yards by coming out on to the main line in the same way it had entered at the time 374 moved. The evidence with reference to back-up signals is not very clear. Fireman Reynolds, from his station on the left-hand side of his engine, says he saw back-up signals down in the south part of the yards, but, not knowing who gave them, did not transmit them to the engineer, Werline. It is inferable from this that such signals were given by the crew of 752. It was shown that Scoggin knew that his train had been ordered to pick up about 30 cars of stock in the yards. Taylor, the head brakeman of 752, testified that he told Scoggin that when 397 backed up it would give 374 a chance to back up and get the stock, and that Scoggin knew where the stock was situated. It is apparent, however, that 752 must also have left its position north of the stock cars standing on the stock track before 374 could reach them, and it is evident, therefore, that the jury did not believe this part of Taylor's testimony. Taylor's testimony is that, as soon as the engine of 397 cleared the switch

of the passing track, he closed it and signaled Werline, the engineer of 374, to back, not waiting until 397 had reached the main line. The distance between the main-line track, where deceased was operating the switch, and the passing track, upon which his train was standing, is shown to have been about 10½ feet; and it appears that 397, with which he had to do, was moving when his own train began to back. The fact that these two trains were moving, and the inference reasonably to be drawn from the testimony that train 752 was also moving, is sufficient evidence justifying the court in submitting to the jury the question of whether or not Werline and Taylor were guilty of negligence in moving their train at the time, under the conditions and in the manner in which said train was moved. It appears that the three freight trains had been standing in the yards almost an hour when deceased was killed, and that it was the duty of the deceased, and his co-brakeman Taylor, to inspect the train at all stops to see that the equipment was in proper order. The witness Moore testified that it was not customary to give notice before going under trains when they were stopped for an indefinite time, as on this occasion; that the night was very dark, and on that account neither the engineer nor fireman were able to tell who was giving signals; and this witness, with J. E. Davis, testified that according to the custom in railroading, and on the defendant's road, it was the duty of the engineer to know the position of his train crew under such circumstances.

Upon the contention on the part of appellant that it is not shown what acts of negligence were the proximate cause of the death of the deceased, since it is not shown how he was killed, we think the evidence is sufficient to warrant the court in submitting the issue. Brakeman Taylor testified that he reached the deceased just after the train had passed over him, and asked him if he stepped back and let the caboose knock him down and the train run over him, and that deceased answered, "Yes;" and it is further shown that, in reply to a question by Werline, deceased said he had lined up the switch for the local. It cannot be contended that he was killed in an effort to board the caboose; his position on the train, being head brakeman, was upon or near the engine. While the train was backing Spicer testified that from his position on the east side of train 397 he heard some one hello, and that after train 397 passed he ran over to train 374 and told Werline, the engineer, of that fact, and that after 374 had backed south far enough he could see Scoggin lying upon the passing track with his head toward the southwest, still conscious. We think there is sufficient evidence to support the findings of the jury upon all of the grounds of negligence submitted to the court.

The second assignment of error is a mul-

tifarious objection to the action of the court in submitting the case to the jury upon 33 special issues. Appellant has endeavored, however, by propositions following the assignment, to present the objections separately.

[2] The first proposition is that the court erred in submitting the case to the jury upon issues that were immaterial, and in calling for findings of mere evidential facts upon which no judgment could be predicated. This assignment is not briefed in such manner as to require its consideration. Considered as a whole, the charge is not subject to the objections, at least to the extent of requiring a reversal of the judgment. While it is true that the case might have been submitted to the jury upon fewer issues, the mere fact that the court has required the jury to find upon immaterial issues is not reversible error, unless the number and character of questions propounded has resulted in confusing the jury. Kelley v. Ward, 94 Tex. 289, 294, 60 S. W. 311; J. N. Guffey Petroleum Co. v. Dinwiddie, 182 S. W. 444. The answers of the jury to the several issues are clear, unequivocal, and show that the jury was not confused or misled by the number of questions asked.

[3] Under this proposition appellant refers us to the statement of pleadings and preliminary statement contained in the first part of his brief. This statement covers more than 100 pages of the brief, and we are not required to gather from such an extensive reproduction of the evidence and pleadings matters pertinent to the contention urged by appellant under this assignment. Rule 24 (142 S. W. xii) for the Courts of Civil Appeals requires that assignments of error must distinctly specify the grounds of error relied on, and that such ground not distinctly specified in reference to that which is shown in the record is considered waived. Nowhere under this proposition does appellant endeavor to point out the particular issues subject to his objection.

[4] The proposition is further urged that it is prejudicial error, in submitting special issues to the jury, for the court to give undue prominence to plaintiff's contention and theory of the case. As an abstract proposition of law this is true, but we are not told, as required by Courts of Civil Appeals rule No. 24, what particular contention of plaintiff's case is given undue prominence, and, while we have read the 33 questions over several times, we cannot say that the charge is subject to this objection. No sufficient statement follows this proposition. The same disposition is made of the third proposition, wherein it is urged that the repetition of the theory and contention of the plaintiff by numerous questions calling for findings of evidential facts renders the charge argumentative, and is calculated to lead the jury to believe that the court entertained the opinion that the defendant's employés were guilty of negligence in the operation of the train. This is clearly not a distinct specification of error.

[5] While the practice of submitting a case to the jury upon a multitude of issues, calling for findings of immaterial facts and mere matters of evidence, is frequently condemned by the appellate courts, under rule 62a (149 S. W. x), Court of Civil Appeals, it is necessary for appellant, in order to obtain a reversal of the judgment, to show that he has been prejudiced by the action of the trial court.

[6, 7] The objection is further made that some of the interrogatories are leading. This objection is not tenable, as the rule is settled that, in submitting the case to the jury upon special issues, it is proper for the court to ask leading questions, provided they are not so framed as to suggest the answer to be made by the jury. We think it is the duty of the court, in the trial of negligence cases, to submit the several grounds of negligence alleged and proved by plaintiff separately. Dallas Hotel Co. v. Fox et al., 196 S. W. 647.

[8] Appellee has objected to the consideration of assignments numbered 2 to 12, inclusive, because the objections urged to the charge and the several paragraphs thereof by appellant in his brief are not the objections made and filed in the court below. This court held in Memphis Cotton Oil Co. v. Tolbert, 171 S. W. 309 (16–18), that objections to the charge as given, when not properly made in the court below, could not be urged in this court, and all objections not made before the charge was submitted to the jury were waived under the Acts of the Thirty-Third Legislature, c. 59, p. 113 (V. S. Civ. St. arts. 1971, 2061). We have compared some of the objections in appellant's brief with his objections to the charge given, as filed in the trial court, and find that the rule has been grossly violated. The purpose of requiring objections to be made to the charge before it is given to the jury is to avoid the very practice resorted to in this case. It is fair to the trial judge, if his charge is erroneous, to call his attention to the errors before it is given to the jury. Hence the statute provides that any errors not mentioned in the objections filed to the charge shall be considered waived. As an illustration of the condition of the record compared with appellant's brief, the fourth assignment is as follows:

"The court erred in submitting to the jury the fifth question in the charge, as follows: 'At the time that the train which struck deceased, if he was struck by a train, was started in motion, and during the time it was being moved away, was there another or other trains in said yard also being moved, and was there at said time a great deal of confusion and noise in said yards as a consequence of the movements of said train or trains and of the number of trains that were in said yards at said time?' because (a) said question relates to and requires a finding of a collateral and evidential fact which would constitute no defense for judgment, and is not a submission of a substantial and material issue arising from the evidence in the case; (b) said question is leading, on the weight of evidence, argumentative, calculated to confuse and mislead the jury; and (c) calculated to lead the jury to believe that confu-

sion and noise in the yards would relieve the deceased of negligence or would constitute negligence against the defendant; (d) said question is calculated to divert the attention of the jury from the material issue in the case; and (e) said question gives undue prominence to plaintiff's contention and theory in the case, and was highly prejudicial to the defendant."

The objection urged to issue No. 5, in defendant's exceptions to the court's charge filed in the court below, are as follows:

"Defendant excepts to question No. 5, because it is not a submission of any issue made by the pleadings and evidence in the case, but is the submission of a question that calls for a finding of the evidence, and any answer that the jury might make to the question could not constitute negligence or any basis of a cause of action upon which judgment could be rendered: and, further, because the same is misleading and confusing and calculated to confuse the jury."

From the above quotations it will be seen that appellant is urging a number of objections in this court which were not called to the attention of the trial court. The statute above mentioned was enacted to prevent this practice. The effect of the statute is to require appellant, in his motion for new trial, to urge only the objections which were urged to the charge in the written objections filed before the instructions were read to the jury, and, since the motion for new trial is limited to the grounds of objections set up in the written objections filed in the trial court, other and additional grounds cannot be heard here.

The fifth assignment of error is grouped with the fourth. No proposition follows this assignment except this statement:

"Same as propositions under second and third assignments of error."

The statement following this is as follows:

"The questions complained of are correctly set forth in these assignments. (Tr. 37-38.) Exceptions and objections were made by defendant to said questions before the main charge was read to the jury. (Tr. 43.) Appellant refers to and adopts statements under second and third assignments of error. Authorities same as under second and third assignments of error."

We have heretofore shown that the statements under the second and third assignments of error are not in compliance with the rules. None of the assignments, from the second to the twelfth, inclusive, distinctly point out alleged error as required by the rules. Appellee's objections to them are sustained.

[9] The thirteenth assignment is based upon the court's action in refusing to submit the following special issue, requested by defendant:

"Was the deceased, W. A. Scoggin, injured by attempting to get on some part of train No. 374 while it was backing up?"

There is no evidence in the record to authorize the submission of any such issue. On the contrary, the deceased himself stated that the train ran over him while he was standing on the track. It is insisted under the fourteenth assignment that the court should have submitted to the jury special issues upon the question of contributory negligence asked by defendant. The record shows that the issue of contributory negligence was fully submitted, as follows:

"Question 27. Did the deceased fail to exercise ordinary care to ascertain whether or not the train by which he was run over, if any, was moving backward towards him just before he was struck thereby, if he was so struck? Question 28. Was such failure, if any, negligence? Question 29. Did such negligence, if any, cause or contribute to cause the death of the deceased? Question 30. Was the deceased guilty of contributory negligence in being at the place he was when he was struck by said train, if he was so struck, under the circumstances that you find from the evidence existed at the time?"

[10] The sixteenth assignment of error is based upon the court's action in admitting in evidence a certain rule printed in appellant's time-table, upon the ground that there was no predicate for the introduction of secondary evidence of the contents of the time-table in force at the time of the accident. The objection urged in the brief was not urged in the trial court, and cannot be considered here.

[11] Assignments numbered 17 to 24, inclusive, complain of the admission of certain oral evidence with reference to the rules in appellant's time-tables, and to state when the time-table introduced became effective; but under none of these assignments do we find what objections were made to the introduction of this evidence. For this information we are simply referred to four different bills of exception. The courts have uniformly held that assignments of this character should not be considered. Stone v. Stitt, 56 Tex. Civ. App. 465, 121 S. W. 187.

Several propositions are urged under the twenty-fifth assignment, which have been disposed of by what we have heretofore said. The only proposition remaining to be considered is that the amount of the verdict, to wit, $26,000, is excessive. There is nothing in the record to show that the jury acted through prejudice or passion, and, while the amount seems to be large at first, when considered in the light of the entire record we are not prepared to say that it is unreasonably so.

The judgment is affirmed.

⟊For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes