TEXAS STATE AFL–CIO, Appellant,

v.

S. Perry BROWN, Chairman, Texas Employment Commission, et al., Appellees.

No. 11179.

Court of Civil Appeals of Texas.

Austin.

April 29, 1964.

Rehearing Denied May 20, 1964.

Sam Houston Clinton, Jr., Austin, for appellant.

Waggoner Carr, Atty. Gen., Paul R. Robertson and Edward R. Moffett, Asst. Attys. Gen., Austin, for appellees.

HUGHES, Justice.

Texas State AFL-CIO, a voluntary unincorporated association of local labor unions throughout the State of Texas which are made up of working men and women who are residents of the State of Texas, originally sued the Texas Employment Commission and its members the Honorable S. Perry Brown, Chairman, Honorable J. J. (Jake) Pickle and Honorable J. E. (Ed) Lyles, Commissioners and Henry Rothell, J. W. Burcham, Herman E. McKinney and C. M. Turlington, employes of the Commission for a declaratory judgment and injunctive relief.

Appellant non-suited as to the Commission and upon its motion made under Rule 358, Texas Rules Civil Procedure, W. S

Birdwell, Jr., who has succeeded the Hon. J. J. Pickle (resigned) as a member of the Texas Employment Commission has been substituted for Mr. Pickle as a party to this appeal.

Appellant alleged that the persons sued were obligated to comply with and not to violate either the letter or spirit of the laws of the State of Texas. We quote in full all of its charging allegations:

"However, contrary to the laws of the State of Texas, beginning on a date in 1962, unknown to the Plaintiff but well known to the Defendants, they did use their respective official position to secure, or attempt to secure, special privileges or exemptions for certain persons or group of persons and did undertake by direct communication to promote the introduction and passage of proposed legislation by the Legislature and did contact directly or indirectly members of the Texas Legislature on behalf of such other persons or group of persons in relation to proposed legislation making amendments to the Texas Unemployment Compensation Act.

"5.

"Specifically, on such date and thereafter, the Defendants, as Commissioners and employees of the Texas Employment Commission and while at their respective places of employment and during their normal working hours and while on the payroll and drawing wages from the Texas Employment Commission, on behalf of employers of the State of Texas, did research, discuss, confer, propose, and draft certain proposed amendments to the Texas Unemployment Compensation Act relating to benefit provisions. These acts were either required by or acquiesced in by the Defendant Commissioners. Each and all of said proposed amendments relating to benefit provisions show on their face to be in the interest of employers covered by the Texas Un-

employment Compensation Act and detrimental to the interests of employees and working men and women of the State of Texas who are or might become claimants for benefits under the Texas Unemployment Compensation Act. Thereafter, one or more of the Defendants made available to employers or their representatives the proposed amendments to the Texas Unemployment Compensation Act thus formulated and such amendments were subsequently introduced in bill form in the House of Representatives and in the Senate of the Legislature of the State of Texas.

"6.

"As an employer covered by the Act, the Plaintiff pays contributions into the Unemployment Compensation Fund based upon wages earned by its covered employees. As such employer and also as a 'mouthpiece' of the hundreds of thousands of working men and women in the State of Texas who belong to labor organizations, Plaintiff objects to the activities of Defendants as employees of the Texas Employment Commission and says that the same are in violation of the spirit, if not the letter, of the laws of the State of Texas pertaining to State employees in such matters, for which the Plaintiff has no adequate remedy at law. Therefore, the Plaintiff seeks injunctive relief against such acts and conduct."

Upon a non-jury trial, judgment was rendered denying appellant any relief.

The Legislature in creating the Texas Unemployment Compensation Commission provided that it should consist of three members, one of whom should be a representative of labor, one of whom should be a representative of employers, and one of whom should be impartial and represent the public generally. 5221b–8, Vernon's Ann.Tex.St.

Mr. Pickle, while on the Commission, was the representative of employers.

Art. 5221b–9, id, provides, in part, that it is the duty of the Commission to administer the Texas Unemployment Compensation Act and that "it shall have power and authority to adopt, amend, or rescind such rules and regulations, to employ such persons, make such expenditures, require such reports, make such investigations, and take such other action as it deems necessary or suitable to that end." Such Article also enjoined the Commission to submit an annual report of its operations to the Governor and to make such recommendations for amendments to the Act as the Commission might deem proper. Also the Commission was charged with the duty of promptly informing the Governor when it believed that a change in contribution or benefit rates would become necessary to protect the solvency of the benefit fund.

It will be noted that while in the pleadings of appellant it refers to itself as a taxpaying employer and as spokesman for labor organization members it complains only of acts which it conceives to be detrimental to employes. It makes no charge that any members or employe of the Commission has done any act calculated to harm employers.

The evidence follows the pleadings. It has for its sole purpose the attempt to prove that the activities of Mr. Pickle were beneficial to employers and detrimental to employes. Mr. Pickle was extremely active in representing the interests of employers. He held meetings throughout the State, accompanied by State employes who were technical experts in relation to the Act, which were attended only by employers. He sent out news letters to employers pertaining to problems and matters connected with administration of the Act. He interested himself in the preparation and passage of legislation favorable to employers under the Act. There is no question but that Mr. Pickle took his position as employer representative on the Commission seriously and that he was an assiduous partisan in behalf of employers. We quote some of the language in appellant's brief which is typical of the charges they make:

"That Pickle, Rothell, et al, by researching, discussing, conferring proposing and drafting proposed amendments to the Act relating to benefit provisions (which clearly are to the benefit of the employers in that extended and onerous disqualifications and restricted eligibility standards imposed on claimants would result in lesser amounts of benefit wages charges made against the account of such employers and concomitant lower contribution rates) were using their positions to secure special privileges for employers seems evident.

"Pickle obviously thought so for he stated and reiterated that the proposals, in bill form, were 'introduced by friends of management,' were 'generally backed by employers' and reprimanded employers for not contacting their legislators to get 'corrective legislation.'

"Rothell, Burcham and McKinney knew so for each was present at one or more of Pickle's employer meetings where employers made the suggestions.

"Employers thought so for their representatives caused Pickle to raise many of the questions in the first place, then made suggestions at meetings held by Pickle, and through their representatives on employers advisory council reviewed the proposals once they were in report form and backed them in bill form by testifying in support of them before legislative committees."

■ We do not understand that appellant complains of the activities of either of the other Commissioners although it does object to their passiveness. It does complain that some of the employes of the Commission accompanied Mr. Pickle to employer meetings. We do not consider the work of these employes on such trips as separate from the activities in which Mr. Pickle was engaged.

The propriety of what they did was the responsibility of Mr. Pickle, not theirs.

■ The injunctive relief here sought is incidental to the main purpose of the suit which is for a declaratory judgment. A proceeding for a declaratory judgment must be based on an actual, real, bona fide, and justiciable controversy. 19 Tex.Jur.2d, p. 147.

■ It is doubtful that a real genuine, justiciable controversy is shown to exist in this case between appellant, as an employer, and the Commission, its members and employes. Every act of which appellant complains or with which it finds fault is beneficial to it as an employer. It seems to us, very far fetched that a justiciable controversy could be generated by a benefit conferred rather than by a wrong committed or anticipated.[1] A declaratory judgment by us in this case, where no employe is present, and is sought to be represented only by an employer, would not, or at least in our opinion should not, bind employes who are not present.

■ If an adjudication here would not authoritatively determine the matter presented then it should not be made. See California Products, Inc. v. Puretex Lemon Juice, Inc., 160 Tex. 586, 334 S.W.2d 780, Art. 2524–1, Sec. 6, V.A.T.S. In Sec. 11 of Art. 2524–1, id, it is provided that "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." See also Southern Traffic Bureau v. Thompson, 232 S.W.2d 742, San Antonio Civil Appeals, writ ref., n. r. e., where declaratory judgment relief was denied because of the absence of an interested party.

When we consider appellant's capacity as spokesman for absent employes we encounter serious difficulties. We are cognizant of Arts. 6133–35, V.A.T.S. which provide, in part, that an unincorporated association doing business in this State may sue or be sued without joining its members and that a judgment rendered in such suit shall be binding on the members as if they were individually parties to the suit.

In San Antonio Fire Fighters' Local Union No. 84 v. Bell, 223 S.W. 506, San Antonio Civil Appeals, writ ref., it was held that a local voluntary union labor organization could not maintain a suit against the Mayor of San Antonio and others seeking to prevent them from destroying the union and from intimidating and discharging its members the Court saying with regard to these statutes: "The very language of the statute seems to imply that the company or association can sue or be sued only about property rights, for it limits the right to those companies 'doing business in the state,' showing an intent to confine such suits to matters of business. There is no allegation in the petition of any property right of the association that was threatened by the mayor and commissioners, but from the petition it clearly appears that no right is threatened, except that of the individual member, in which the company or association had no property right whatever."

No property rights of appellant as spokesman for employes are involved in this suit. The only property rights involved, if any, belong to employes entitled to benefits under the Act, none of whom are parties.

We are also aware of Rule 28, Texas Rules Civil Procedure, which provides, in part, that an unincorporated association may sue or be sued in its "assumed or common name for the purpose of enforcing for or against it a substantive right." In construing this rule the Court in Dillard v.

[1] "It is a maxim of the law that wrong without damage does not constitute a good cause of action, as the law furnishes a remedy only for such wrongful acts as result in injury." 1 Tex.Jur.2d, p.

523. Of course, under declaratory judgment proceedings relief need not wait upon the infliction of injury. 19 Tex.Jur. 2d, p. 149.

Smith, 146 Tex. 227, 205 S.W.2d 366, held that it was "not intended to change the substantive rights of the owners of a business operated under an assumed name. The effect of the rule is simply that such owners may now be sued under the trade or assumed name of the business as well as in their individual names." The Court gave this illustration: "To illustrate, under Rule 28 it is proper to sue in the name of 'Dyer Hardware & Furniture Co., owned * * * by S. B. Dyer [Cole v. Dyer Hardware Co., Tex.Civ.App., 77 S.W.2d 286,]' instead of suing in the name of 'S. B. Dyer, doing business under the name of Dyer Hardware & Furniture Company,' as was required in Cole v. Dyer Hardware Co., supra."

In Atkinson v. Thompson, 311 S.W.2d 250, Houston Civil Appeals, writ ref., n. r. e., it was stated that, "Rule 28, Texas Rules Civil Procedure, is not unlike Article 6133. It authorizes suits in the firm name against persons doing business under an assumed name. However, this has been held to be purely procedural," citing Dillard v. Smith, supra.

■. Another rule applicable to declaratory judgment relief is that it will not be granted where the facts upon which the relief is sought are subject to mutation and change. California Products Co. v. Puretex Lemon Juice, Inc., 160 Tex. 586, 334 S.W.2d 780.

The activities of one member of the Commission are in controversy here. These activities were certainly subject to change, although Mr. Pickle stated he would continue the practices under attack. There is no intimation, of course, what the policy of the new Commissioner will be.

In view of the pleadings, evidence, authorities, and change in the personnel of the Commission it is doubtful whether we should render a declaratory judgment. We have, however, concluded to resolve this doubt in favor of our jurisdiction and in the exercise of our discretion to briefly state our view of the law questions before us.

■ The law does not require all members of the Commission to be impartial, this attribute is only demanded of the public representative. Art. 5221b–8. This statute authorizes one Commissioner to be a representative of labor and another to be a representative of employers. The meaning of the word "representative" is manifold, but generally its meaning is that of "being, or acting as, the agent for another, esp. through delegated authority." Webster's Dictionary, 2d ed. Hence, Mr. Pickle could, within the range of his statutory authority, do for employers what they could do for themselves it being a maxim of agency that "he who acts through another acts for himself." 2 Tex.Jur.2d, p. 438.

■ It is our opinion that all of the acts and conduct of Mr. Pickle fairly fall within the legitimate scope of his authority as a representative of employers.

■ We do not, of course, hold that any member of the Commission may properly indulge in arbitrary, capricious or unlawful conduct.

There is only one activity of Mr. Pickle which we believe deserves specific mention.

The Trial Court found that appellees did not promote the introduction and passage of legislation by the Legislature relating to the Unemployment Act favorable to employers.

■ Assuming that there is evidence sufficient to support a finding of fact contrary to the finding of the Court we are nevertheless of the opinion that such conduct is not unlawful but is within the legitimate scope of the Commissioner who is a representative of employers. A Commissioner may expound, expostulate, exhort, about and upon and convince and convert everyone to his point of view regarding defects in the unemployment law but if his voice is not heard by the lawmakers his efforts are wasted. Appellant cites the following provision in the 1963

Appropriation Act as proscribing the expenditure of monies appropriated to the Commission for promoting legislative changes in the Unemployment Compensation Act:

"None of the moneys appropriated by Articles I, II, III, and IV of this Act, regardless of their source or character, shall be used for influencing the outcome of any election, or the passage or defeat of any legislative measure. This prohibition, however, shall not be construed to prevent any official or employee of the State from furnishing to any Member of the Legislature, or to any other State Official or employee or to any citizen, any information or facts pertinent to the official duties and responsibilities of the State agency he represents."

Ch. 525, p. 1652, Acts 58th Leg., Reg. Sess. 1963.

It is our opinion that this provision does not prohibit members of the Commission from supplying the Legislature and its members with information relating to and explaining its impact upon proposed amendments to the Unemployment Compensation Act. Such course of action, it seems to us, is well within the exemption contained in the quoted legislative enactment.

 It is the statutory duty of the Commission to recommend changes or amendments to the Act. There is no evidence here that the amendments to the Act sponsored by Mr. Pickle were not so sponsored by the Commission. Even if they were not so sponsored it is our opinion that an individual member of the Commission has the duty and responsibility to advocate such amendments to the Act as he may deem proper in his capacity as a representative of labor, employers or the public, or as a dissent to the action of the Commission.

Of course, the same latitude and freedom of action given the Commissioner who is a representative of employers would be extended to the Commissioner who is a representative of labor as well as to the Commissioner who is a representative of the public.

It is our opinion that the judgment of the Trial Court should be and it is affirmed in accordance with the declarations of law herein contained.

Affirmed.