**Lee PFLUGER, Appellant,**

v.

**Dr. Jeff COLQUITT, Appellee.**

**No. 20513.**

Court of Civil Appeals of Texas, Dallas.

July 1, 1981.

Rehearing Denied July 29, 1981.

W. Ted Minick, Winstead. McGuire, Sechrest & Trimble, Dallas, for appellant.

Michael V. Powell, Rain, Harrell, Emery, Young & Doke, Dallas, for appellee.

Before GUITTARD, C. J., and ROBERTSON and STEPHENS, JJ.

GUITTARD, Chief Justice.

Lee Pfluger sued Jeff Colquitt for two automobiles sold to Colquitt by Williams, a dealer to whom Pfluger had entrusted them. The trial court rendered judgment on a verdict for Colquitt. Pfluger contended in the trial court and asserts on this appeal that the sale was void because he had not transferred the certificate of title, as required by the Certificate of Title Act, Tex.Rev.Civ.Stat.Ann. art. 6687–1, §§ 33, 53 (Vernon 1977). Colquitt contends that the Act was inapplicable because of the entrustment provision of section 2.403(b) of the Texas Business and Commerce Code (Vernon 1968). We conclude that the Certificate of Title Act controls rather than the Business and Commerce Code, but we hold that Colquitt is entitled to the vehicle as between the parties in view of the jury's finding that Williams was acting as Pfluger's agent and within his actual authority when he made the sale. Accordingly, we hold that the jury's answer to the issues concerning entrustment of the vehicles are immaterial. We also hold that Colquitt is entitled to an attorney's fee under the Deceptive Trade Practices Act, Tex.Bus. & Com.Code § 17.50(d) (Vernon Supp. 1980–81), in view of the jury's finding that Pfluger subsequently denied Williams's authority to act as his agent. On these grounds we affirm the judgment.

The facts are without material dispute. Pfluger owned two antique Cadillac automobiles, which were displayed in a warehouse leased by Williams, owner of Classic Cars of Denton, for an antique automobile museum and restoration business. Colquitt visited the warehouse, examined the cars, and offered to purchase them for $14,500. Williams advised that in order to sell the cars he would need the approval of Pfluger and made a telephone call to Pfluger, who agreed to the price. Williams then signed two bills of sale from Classic Cars to Colquitt, and delivered them and the vehicles

to Colquitt, who gave Williams a check payable to Classic Cars. Williams promised to forward the certificates of title when Colquitt's check cleared the bank. Subsequently, Williams failed to deliver the proceeds of the sale to Pfluger, who then refused Colquitt's demand for delivery of the certificates and denied that he had authorized Williams to sell the cars. Colquitt refused to return the cars, and Pfluger then sued both Colquitt and Williams. Colquitt counterclaimed for title to the automobiles. Williams admitted liability. The jury found that Williams was acting as the agent of Pfluger and within his actual authority when he sold the vehicles to Colquitt, and also found that Colquitt purchased the vehicles in ordinary course of business from Williams, a merchant dealing in antique automobiles, to whom the vehicles had been entrusted by Pfluger. On this verdict the court rendered judgment for Colquitt for title to the vehicles and for Pfluger against Williams for the purchase money.

Pfluger appeals with respect to one vehicle only, abandoning his claim to the other. He makes no attack on the verdict for lack of evidence. He contends that the sale is void as a matter of law under the Certificate of Title Act, Tex.Rev.Civ.Stat.Ann. art. 6687-1, §§ 33, 53 (Vernon 1977). Section 33 of the Act provides that no motor vehicle shall be disposed of at a sale subsequent to the first and that no title shall pass at such a sale unless the owner transfers the certificate of title in the manner prescribed by the Act. Section 53 provides that sales made in violation of the Act are void and that no title shall pass until the provisions of the Act have been complied with.

■ In response, Colquitt relies on section 2.403 of the Texas Business and Commerce Code (Vernon 1968), which provides that any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business. Colquitt argues that this provision prevails over the Certificate of Title Act because section 65 of the Act expressly provides that in case of a conflict the provisions of the Code shall control.

We do not agree that section 2.403(b) of the Code conflicts with the Certificate of Title Act. It is the duty of the courts to interpret statutory language so as to harmonize apparently conflicting provisions and give effect to each in the light of its purpose, if such an interpretation is reasonable. *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550, 559 (1937); *County of Harris v. Tennessee Products Pipe Line Co.*, 332 S.W.2d 777, 781 (Tex.Civ.App.-Houston 1960, no writ); *Dallas Railway & Terminal Co. v. Strickland Transportation Co.*, 225 S.W.2d 901, 905 (Tex.Civ.App.-Amarillo 1949, no writ). We conclude that the two statutes here in question may reasonably be construed so as to give effect to both.

As we interpret section 2.403(b) of the Code, the merchant's power "to transfer all rights of the entruster" is intended to give the merchant the same power to transfer which the owner of goods can exercise himself, even though the owner may not actually have authorized the merchant to make such a transfer. That section need not be interpreted to give the merchant greater power than the owner himself has to transfer the title to a motor vehicle. The power of the owner of a motor vehicle to transfer the title is limited by the Certificate of Title Act, and specifically by section 33, which provides that no motor vehicle shall be disposed of at a subsequent sale and no title shall pass without a transfer of the certificate in the manner prescribed by the Act. Under this provision, if the owner has no power to dispose of the vehicle without a proper transfer of the certificate, then no merchant to whom the vehicle is entrusted has the power to dispose of it without a proper transfer of the certificate. A purchaser from the merchant to whom the vehicle is entrusted acquires exactly the same rights as if he had purchased from the owner, but no more. If he purchased from a merchant without a proper transfer of the certificate, he gets no better title than if he had purchased from the owner without a proper transfer of the certificate.

If the contrary interpretation were adopted, a dealer to whom an owner has

entrusted his vehicle for some other purpose, such as repairs, would have the power to sell the vehicle and pass title to a purchaser without a transfer of the certificate, thus defeating the purpose of the Certificate of Title Act, which is to prevent theft of motor vehicles, traffic in stolen vehicles, and sale of encumbered vehicles without disclosure of existing liens. *See Motor Inv. Co. v. Knox City*, 141 Tex. 530, 174 S.W.2d 482, 484 (1943). Such a result may be proper in the case of goods which may be transferred by delivery, since in that case section 2.403(b) gives the merchant the power of the owner to transfer the title by delivery. In the case of a motor vehicle, however, the same result does not follow from the provisions of section 2.403(b) in view of the owner's lack of power to transfer the title without a proper transfer of the certificate. This interpretation gives meaning to both the Act and the Code consistent with the purposes of both and obviates the necessity in this context to resort to section 65 of the Act to resolve any apparent conflict between the two. *See Boswell v. Connell*, 556 S.W.2d 624, 626 (Tex.Civ.App.-Beaumont 1977, writ ref'd n.r.e.).

Under this construction of the statutes, in the present case, Colquitt is in the same position as if he had purchased directly from Pfluger without a proper transfer of the title. Although the provisions of sections 33 and 53 of the Act might be construed to render the transaction entirely void because the certificate was not transferred to Colquitt, that result does not necessarily follow in the light of the relevant decisions. It has been held that the sale of a vehicle without compliance with the Act may be effective as between the parties and thus give the purchaser a right to demand a proper transfer of the certificate. *Phil Phillips Ford, Inc. v. St. Paul Fire and Marine Ins. Co.*, 465 S.W.2d 933, 937 (Tex. 1971); *Ballard v. Associates Inv. Co.*, 368 S.W.2d 232, 234 (Tex.Civ.App.-Dallas 1963, writ ref'd n.r.e.); *Rush v. Smitherman*, 294 S.W.2d 873, 877–78 (Tex.Civ.App.-San Antonio 1956, writ ref'd). This result does not defeat the purpose of the Act, as previously stated. Accordingly, it has been held that

the Act is intended to protect purchasers and lenders against schemes by persons without authority or ownership, rather than to permit owners to disavow the acts of authorized agents. *See Texas State Bank v. Foremost Ins. Co.*, 477 S.W.2d 652, 655 (Tex.Civ.App.-Corpus Christi 1972, writ ref'd n.r.e.). As between the parties, a sale without a transfer of the certificate is analogous to a defective deed of real estate, which, though ineffective as a conveyance because of noncompliance with statutory requirements, may nevertheless be binding between the parties as an executory contract if the equities of the case so require. *Cf.* Tex.Rev.Civ.Stat.Ann. art. 1301 (Vernon 1980); *Magee v. Young*, 145 Tex. 485, 198 S.W.2d 883, 885–86 (1947). In light of these authorities and the jury's findings, we conclude that the sale by Williams as Pfluger's agent was binding on Pfluger, and, consequently, that the trial court was correct in holding that Colquitt was entitled to a transfer from Pfluger.

This result is not contrary to *Freeberg v. Securities Investment Co.*, 331 S.W.2d 825 (Tex.Civ.App.-San Antonio 1960, writ ref'd), on which Pfluger principally relies. Although the facts in that case were similar in that the dealer to whom the vehicle was entrusted sold the vehicle without a proper transfer, there is a crucial distinction. Here, the jury found that Williams was acting as the "actual agent" of Pfluger and "within the scope of his authority" when he sold the vehicle to Colquitt, and no attack has been made on this finding. In *Freeberg*, on the other hand, the opinion points out that although Hilltop, the dealer, was authorized to act as agent for Freeberg, Hilltop did not purport to act as Freeberg's agent in dealing with the purchaser, McClaugherty. Rather, the court based its decision on evidence showing that McClaugherty dealt with Hilltop as owner, although he knew that Freeberg was the owner. The court analyzed this situation as a conversion of the vehicle by Hilltop and an attempt by McClaugherty to purchase from a known converter. Thus, the court held that McClaugherty was not protected

by demanding the certificate from Freeberg. This analysis is confirmed by the following statements in the opinion:

> The error in this case has arisen from a confusion of Hilltop as mere agent for Freeberg, with Hilltop the dealer. Though Hilltop had power to sell for Freeberg, the owner, it was not the owner. Freeberg's complaint is that Hilltop converted the trailer house and all evidence of title to its own use, and that the purchaser knowingly bought from the converter as owner, instead of as Freeberg's agent.

In the present case, no issue of conversion of the vehicle was submitted to the jury. On the other hand, the jury found that Williams was acting as Pfluger's agent in selling the vehicle, and since there is no attack on this finding, the transaction had the same effect as if Pfluger had dealt personally with Colquitt, because one who acts through a duly authorized agent is bound as if he had acted in person. *Lucas v. Whiteley*, 550 S.W.2d 767, 769–70 (Tex. Civ.App.-Amarillo 1977, writ ref'd n.r.e.); *Texas State AFL–CIO v. Brown*, 378 S.W.2d 917, 922 (Tex.Civ.App.-Austin 1964, writ ref'd n.r.e.). Therefore, Colquitt is entitled to demand a proper transfer of the title from Pfluger.

This result is not affected by Colquitt's payment of the purchase price to Williams. Since Williams was found to be Pfluger's agent in making the sale, when Williams accepted the check, he did so as Pfluger's agent and became responsible to Pfluger for the money; thus, the payment had the same effect as a payment directly to Pfluger. *See, e. g., Christopher v. General Computer Systems, Inc.*, 560 S.W.2d 698, 703 (Tex.Civ.App.-Dallas 1977, writ ref'd n.r.e.); *Searle-Taylor Machinery Co., Inc. v. Brown Oil Tools, Inc.*, 512 S.W.2d 335, 337–38 (Tex. Civ.App.-Houston [1st Dist.] 1974, writ ref'd n.r.e.). Williams's subsequent conversion of the money (rather than the vehicle) could not adversely affect Colquitt's right to demand a proper transfer of the certificate from Pfluger. As between Pfluger and Colquitt, Williams's defalcation should be borne by Pfluger, Williams's principal.

Our holding that the transaction is controlled by the Certificate of Title Act rather than the entrustment provision of the Business and Commerce Code disposes also of Pfluger's complaint that the court erred in submitting special issues three and four inquiring whether Pfluger entrusted possession of the automobiles to Williams, whether Williams was a merchant dealing in antique automobiles, and whether Colquitt was a buyer in the ordinary course of business. These issues are immaterial in light of our previous holding. The controlling question in this case is whether Williams was the agent of Pfluger acting within the scope of his authority at the time of the sale so as to establish the transaction as one between Pfluger and Colquitt. The jury answered the issue of authority affirmatively, and the judgment was properly rendered on that ground. We hold that issues three and four have no bearing on the result of the case and, therefore, any error in their submission is harmless. *Kelley v. Ward*, 94 Tex. 289, 60 S.W. 311 (1901); *Texas & N.O.R. Co. v. Blake*, 175 S.W.2d 683, 687 (Tex.Civ.App.-Fort Worth 1943, writ ref'd); *Schaff v. Scoggin*, 202 S.W. 758, 761 (Tex.Civ.App.-Amarillo 1918, writ ref'd); *Morris v. Brown*, 173 S.W. 265, 270 (Tex.Civ.App.-El Paso 1915, writ ref'd).

■ Pfluger complains also of the award of an attorney's fee to Colquitt under the Deceptive Trade Practices Act, Tex.Bus. & Com.Code § 17.50(d) (Vernon Supp. 1980–81). The attorney's fee was awarded on the ground that Pfluger's subsequent denial of Williams's authority to sell the automobiles was a deceptive trade practice within section 17.46(b)(14) of that Act, which includes "misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction" among the "false, misleading or deceptive acts or practices" listed in section 17.46(b). Pfluger insists that as a matter of law a subsequent denial of the authority of a purported agent cannot constitute a ground of relief under the Act. We do not agree. As held in *Williams v. Loftice*, 576 S.W.2d 455,

456 (Tex.Civ.App.-Texarkana 1978, no writ), denial of an agent's authority, though made subsequent to the sales transaction complained of, may be a violation of section 17.46(b)(14) and thus may entitle the purchaser of a vehicle to an attorney's fee if the purchaser prevails in the ensuing litigation. Here, Pfluger's denial of Williams's authority to sell the vehicle was the basis of Pfluger's suit, and as a result of that denial Colquitt was required to employ an attorney for the purpose of defending the suit and asserting his rights in the vehicles. The jury found that Williams was the actual agent of Pfluger acting within the scope of his authority when he sold the automobiles to Colquitt and that Pfluger misrepresented the authority of Williams to negotiate the final terms of the sale. Pfluger does not contend that these findings should be disregarded for lack of evidence. Consequently, Colquitt is the "consumer who prevails" in this litigation and is entitled to receive his "reasonable and necessary attorney's fees" as provided in section 17.50(d).

Affirmed.

STEPHENS, Justice, concurring.

I concur with the result, but respectfully disagree with the grounds. The majority of the court applies the general law of agency to the case. I have found no such application to the sale of a motor vehicle since the enactment of the Certificate of Title Act in 1939. To apply the general law of agency to sales of motor vehicles, without requiring compliance with the Certificate of Title Act as to delivery of the certificate of title, duly signed and acknowledged by the owner or, if not signed, then accompanied by a duly signed and acknowledged power of attorney on a form recognized by the State Department of Public Highways and Transportation, would weaken the effectiveness of the Act. By its enactment of Section 2.403 of the Business and Commerce Code, the legislature provides limited protection to a purchaser in that exceptional circumstance where the sale of a motor vehicle by a merchant (agent) in possession is made to a buyer in the ordinary course of business,

provided the merchant is a dealer in motor vehicles. Subsequently, the legislature recognized this limited exception by its enactment of section 65 to the Act. Thus, I believe that under our facts, a conflict exists between the Act and the Code and that the Code should govern, by virtue of section 65 of the Act.

First I disagree with the majority opinion that the jury's answer to the issues concerning entrustment are immaterial. I believe, rather, that the answers concerning agency are the immaterial issues. The facts are simple. Pfluger owned two antique automobiles which he entrusted to Williams, who was a merchant dealing in that type of merchandise. Williams then sold the two vehicles to Dr. Colquitt who was a buyer in the ordinary course of business. These facts were found by the jury and are not challenged by Pfluger. When the sale was made, Williams did not have the certificates of title to the vehicles in his possession. Instead, he delivered to Dr. Colquitt two bills of sale from his personally owned business, Classic Cars of Denton, in return for Dr. Colquitt's check payable to Classic Cars of Denton. Prior to the sale, Williams told Dr. Colquitt that Pfluger owned the cars. Thus these facts fall clearly within the language of section 2.403 of the Code. Section 2.403(b) of the Code gave Williams the *power*, despite any agreement between Pfluger and Williams, although not necessarily the right, to transfer the title to Dr. Colquitt, who was found to be a buyer in the ordinary course of business.

A review of the Certificate of Title Act reveals that it was enacted by the legislature in 1939. In construing the Act, our supreme court has held that its principal purpose is to replace the previous method of transferring motor vehicles by bills of sale, and to provide one central state-wide agency to administer the Act. The Act is intended to be a comprehensive and complete scheme for the regulation of the transfer of title to a motor vehicle when a sale is made. *Drake Insurance Co. v. King*, 606 S.W.2d 812 (Tex. 1980).

Certain provisions of the Act, pertinent to this case are sections 33, 40, 51 and 53. The Act was amended in April 1971, by adding:

Sec. 65. In case of any conflict between this Act and the Business and Commerce Code Chapters 1 through 9, the provisions of the Business and Commerce Code control.

The controlling provision of the Texas Business and Commerce Code is section 2.403.

Pfluger argues that the Act controls and governs all "subsequent sales" of motor vehicles, and that the Code governs only "first" sales of motor vehicles. I disagree with this interpretation. Pfluger derives his authority for this proposition from *Boswell v. Connell*, 556 S.W.2d 624 (Tex.Civ. App.-Beaumont 1977, writ ref'd n.r.e.); and *Apeco Corp. v. Bishop Mobile Homes, Inc.*, 506 S.W.2d 711 (Tex.Civ.App.-Corpus Christi 1974, writ ref'd n.r.e.) which were both decided after the Act was amended by adding section 65.

Before the addition of section 65, our supreme court, in *Associates Discount Corp. v. Rattan Chevrolet, Inc.*, 462 S.W.2d 546 (Tex. 1970), addressed the question of conflicting provisions of the Code and the Act and there held that when the Uniform Commercial Code was adopted in 1965, although no part of the Act was expressly repealed, section 10–103 of the Code provided for the repeal of all acts and parts of acts that are in conflict with the Code. The court held that one of the declared purposes of the Code is to simplify, clarify, and modernize the law governing commercial transactions, and that certain transactions in motor vehicles are expressly governed by section 1.104; that section 9.302 provides for the perfection of liens on certain motor vehicles held in inventory; *and that section 2.403 pertains to the entrusting of certain goods to a merchant, and such merchant's power to then transfer all rights of the entruster to a buyer in the ordinary course of business.* The court further pointed out that the "goods" referenced in section 2.105 clearly includes motor vehicles. Thus the court recognized that all "subsequent sales"

of a motor vehicle are not governed exclusively by the Act, as was held in *Boswell v. Connell, supra.*

After the addition of section 65, and after the opinion in *Associates Discount, supra,* the Houston Court of Civil Appeals (1st Dist.) addressed the construction of the Act and the Code in light of legislative intent in *Nelms v. Gulf Coast State Bank*, 516 S.W.2d 421 (Tex.Civ.App.-Houston [1st Dist.] 1974) *affirmed* 525 S.W.2d 866 (Tex. 1975). There the question of priority of liens was presented, requiring a determination of whether a lien duly recorded on a certificate of title was superior to a subsequently acquired mechanic's lien. Despite the provisions of the Act, they held that the recorded lien on the certificate of title was not superior because of the language of the Code. In doing so, the court reasoned that by the legislative amendment of the Act, adding section 65, it must be *presumed* there was intended some amendment of existing law, citing as its authority, *American Indemnity Co. v. Noble*, 235 S.W. 867 (Tex. Comm'n App. 1921, judgmt. adopted) and *American Surety Co. of New York v. Axtell Co.*, 120 Tex. 166, 36 S.W.2d 715 (1931). The court further held that the legislature intended that in all cases of conflict between the Certificate of Title Act and Chapters 1 through 9 of the Business and Commerce Code, the Business and Commerce Code should prevail.

With this background, and the pertinent provisions of the Act and the Code in mind, we turn to the cases of *Apeco* and *Boswell.* In *Apeco* the vehicle was new and title was in the form of a manufacturer's certificate instead of a certificate of title because the vehicle had not yet been sold for the first time, and thus had not been registered under the Certificate of Title Act. In relying on definitions contained in the Act, the court held that the sale of a new motor vehicle, prior to its registration, constitutes a "first sale." These sales can be from manufacturer to dealer, from dealer to dealer, and from dealer to owner, and are not governed by the Certificate of Title Act. All sales thereafter are subsequent

sales and are governed by the Act. I have no quarrel with this general statement of the law. However, Pfluger takes the position that the general language of *Apeco* establishes the absolute rule that all subsequent sales of a motor vehicle, despite section 65 of the Act, are governed solely by the Act. I disagree. If this were the intention of the legislature, the amendment of the Act by adding section 65 would be illogical and meaningless. In *Apeco* the Court was not dealing with a conflict between the Act and the Code. To the contrary, they were dealing with a "first" sale of a motor vehicle which is excluded from the Act by definition. The *Apeco* court pointed out that the supreme court in *Rattan Chevrolet, supra,* held, *inter alia,* that the purpose of the Code was to clarify the entire body of commercial transactions, and that the broad definition of "goods" in the Code includes motor vehicles. Further, that insofar as the Act and the Code deal with the same subject matter, they are in *pari materia.* Consequently, when considered together as they must be, the provisions of section 45 of the Act, as related to liens, and section 9.307 of the Code, are in conflict, and the Code applies.

Next, we turn to *Boswell.* There one Jenkins negotiated the purchase of a vehicle from Boswell, an automobile dealer. Jenkins delivered a sight draft to Boswell as payment for the vehicle and took delivery of the vehicle, but not of the certificate of title. Boswell sent the sight draft, with the certificate of title attached, to the drawee for collection, and it was returned unpaid. Jenkins, in the meantime, had sold the vehicle to Connell. When Boswell then refused to deliver the certificate of title to Connell, Connell sued Boswell to force a transfer of title to him, relying on section 2.403 of the Code. The trial court rendered judgment for Connell, finding that he had acquired the vehicle as a good faith purchaser and a buyer in the ordinary course of business. The reversal was based on grounds that *Apeco* had established the rule that "first" sales of motor vehicles were governed by the Code, but that the Act was the sole governing law with respect to subsequent

sales. Thus, by applying this rationale, the court concluded that the facts of *Boswell* created no conflict between the Code and the Act. The court also recognized that as between the *immediate parties,* i. e., Jenkins/Connell, the provisions of the Act did not render the sale void under the rule of *Ballard v. Associates Investment Co.,* 368 S.W.2d 232 (Tex.Civ.App.-Dallas 1963, writ ref'd n.r.e.) and *Rush v. Smitherman,* 294 S.W.2d 873 (Tex.Civ.App.-San Antonio 1956, writ ref'd). However, to accept the rationale of *Boswell,* one must agree that *Apeco* established the rule that all "subsequent" sales of motor vehicles are governed solely by the Act, and that section 65 of the Act does not mean, despite its clear language, that in the event of conflict between the Act and the Code, the Code shall govern. This I cannot do. It is true Jenkins purchased the vehicle from Boswell by issuing a sight draft which was later dishonored by the drawee. Yet, under section 2.403(a)(1), (4) of the Code, even though Jenkins may have procured the vehicle by fraud, he acquired voidable title, and thus was empowered to transfer good title to a good-faith purchaser for value. *In re Samuels & Co., Inc.,* 526 F.2d 1238 (5th Cir. 1976). Likewise, Connell, a good-faith purchaser, and a buyer in the ordinary course of business, with no knowledge of these facts, paid Jenkins consideration for the car, and thus he should have acquired good title.

I believe the rationale in the case of *In re Samuels & Co. Inc., supra,* although dealing in "goods" other than motor vehicles, adds even greater weight to my analysis that Jenkins had the power to transfer good title to Connell under the facts of *Boswell.* There the court dealt with the rights of a purchaser under section 2.403 of the Code. The court held that section 2.403 gives the purchaser of goods, even though the goods are purchased by means of a worthless check, and even though delivery of the goods may have been procured by fraud, *the power to pass greater title to a good-faith purchaser than he himself might claim,* even to the detriment of the defrauded seller. This theory is, of course, founded

upon the public policy that protection should be afforded consumers in commercial transactions.

Had the Certificate of Title Act not been in force at the time of the *Boswell* transaction, it is clear that title to the goods would have passed to Connell under the provisions of the Code. On the other hand, had the Business and Commerce Code not been in effect, it is equally clear that title would not have passed to Connell under the provisions of the Certificate of Title Act. Thus, I conclude that if the same factual transaction can harvest different results under different statutes, the statutes are in conflict. I would decline to follow the rationale of *Boswell*.

Next we turn to the case of *Freeberg v. Securities Investment Co. of St. Louis*, 331 S.W.2d 825 (Tex.Civ.App.-San Antonio 1960, writ ref'd) which is perhaps the most significant case addressing the applicability of the Texas Certificate of Title Act to sales of motor vehicles by the agent of the principal. The facts of that case are almost identical to the facts of our case. In *Freeberg*, a member of the armed services, was scheduled to be transferred to Germany. He owned a trailer house which is defined by the Act as a motor vehicle. Desiring to sell the vehicle, he took it to Hilltop Trailer Sales, a business operating under an assumed name, which was actually owned by Alliance Finance Corp., and entered into a written agreement with Hilltop which provided that Hilltop would sell the vehicle as his agent for a commission of five percent (5%) of the sale. The written contract authorized Hilltop to sell the vehicle, collect the full payment, and immediately pay to Freeberg the sum collected. In conjunction with this agreement, Freeberg delivered the certificate of title to Hilltop along with an *executed power of attorney* granting Hilltop authority to transfer the motor vehicle when sold. The line for the purchaser was left blank, to be filled in later, at the appropriate time. However, this power of attorney was never used to transfer the certificate of title. After Freeberg went to Germany, Hilltop sold the trailer to Mr. McClaugherty. It was undisputed in the record that prior to the sale Hilltop told McClaugherty that the trailer was owned by Freeberg, and that Hilltop was acting only as selling agent for Freeberg. Despite this disclosure, McClaugherty dealt with Hilltop as seller. McClaughterty transferred a trailer, which he owned, directly to Hilltop, as a down payment on Freeberg's trailer and executed a time purchase contract, as buyer of Freeberg's trailer which designated Hilltop as seller. In our case, just as in *Freeberg*, Williams told Dr. Colquitt prior to the sale that Pfluger owned the vehicles, yet Dr. Colquitt made his check payable to Classic Cars, and Williams executed two bills of sale from Classic Cars of Denton to Dr. Colquitt as evidence of the sale. In both *Freeberg* and our case, despite the undisputed knowledge that ownership of the vehicles was in another person, the transaction was handled as though the agent was in fact the owner.

With these identical facts in mind, we turn to the court's analysis of the law in *Freeberg*. The court first noted that section 33 of the Certificate of Title Act states that no motor vehicle may be disposed of at a subsequent sale unless *the owner designated in the certificate of title shall transfer the certificate of title* and that section 53 declares that sales in violation of the Act shall be void and that no title shall pass unless the provisions of the Act have been complied with. The trial court had ruled in favor of a valid sale, but on appeal its decision was reversed and the sale was held to be invalid. Although McClaugherty contended that Freeberg had clothed Hilltop with apparent authority, the court reasoned that by not assigning the title to Hilltop, (although he had executed and delivered a blank power of attorney to Hilltop for its use in transferring the vehicle), Freeberg had done just the opposite and thus had withheld appearances of clothing Hilltop with apparent authority. The court held, "that the declared purpose of the act is to defeat schemes to traffic in other person's motor vehicles and one of these schemes is conversion by an agent of a principal's vehicle." The court also recognized that there

could be a valid sale between owner and purchaser even though the certificate of title is not delivered immediately reasoning that there might be a short time lapse because of the time required to process papers, yet recognized that "those cases do not excuse the processing of papers indefinitely and do not countenance sales by non-owners." In upholding the Act and its strict compliance, the court held that despite the uncontroverted evidence of agency, and the ability of Hilltop to transfer the certificate of title, its acts by selling the vehicle as owner constituted a conversion of the vehicle. If we apply the *Freeberg* rationale, then under the facts of the case at bar, despite the jury's finding of agency, Williams, by selling the cars as owner, converted the vehicles, and by his failure to deliver the certificates of title he violated the Act. Thus, the sale was void and no title passed.

Section 55 of the Act confers authority on the State Department of Public Highways and Transportation to promulgate forms to be used to effectuate the transfer of a motor vehicle, and one of those forms, prepared by the department is that of the appointment of an agent by an owner. These forms are available for use by the public. Consequently, upon receipt of the certificate of title, signed and notarized by the owner (together with other forms not pertinent to this case), or on receipt of the certificate of title (together with a proper power of attorney form, signed and acknowledged by the owner) the department will effect a transfer of title to the purchaser. The use of this power of attorney form, coupled with the certificate of title, gives the purchaser the protection which was intended by the Act. This procedure was not followed in *Freeberg* although the owner fulfilled his obligation by delivering a properly executed blank power of attorney to Hilltop for its use in a subsequent sale, and yet, the court found the unilateral act of Hilltop constituted conversion. The proper procedure was not followed in the case at bar. Therefore, it would seem, in this case, that Pfluger was attempting to avail himself of the protection afforded by the Act. If we hold that no conflict exists between the Code and the Act, section 51, which prohibits the sale by either the owner or agent without possession of the certificate of title (or duly executed power of attorney), should prevail and therefore void the sale. I believe the legislature recognized this potential hazard, and enacted section 2.403 of the Code and its entrustment provision to provide safety to the consumer when buying merchandise in the ordinary course of business from a dealer, engaged in selling that type of merchandise. The legislature, by its enactment of article 65 of the Act, gave the necessary protection to a buyer from an agent, where agency does in fact exist, yet in the case at bar, the owner and agent have not complied with the Act. To hold that the general law of agency should prevail over the Certificate of Title Act without the necessary documentation required by the department under the authority of the Act, would, I believe, weaken the effectiveness of the Act and enlarge the exception to the Act created by section 2.403 of the Code. I believe that no such construction of the Act was intended. I would hold that, under these facts, conflict exists between the Code and the Act and that the Code governs.